HOSACK & BLUNT, executors, *vs.* ROGERS and others.

Where a firm consisting of three persons became insolvent and assigned the effects of the copartnership for the benefit of their creditors, who agreed to release the two junior members of the firm, and the senior member covenanted with the creditors to pay their debts out of another fund if the assigned property was found to be insufficient for that purpose ; *Held,* that the release and covenant operated as a novation or extinguishment of the original debts as to all the copartners ; and that upon the death of the senior member of the firm all the creditors must claim as specialty creditors against his estate under the covenant, although some of them had recovered judgments against the firm previous to the execution of the release and covenant.

Upon a joint judgment against two or more persons, if one of them dies, the debt, except so far as it is a lien upon real estate, survives as against the other only, and the representatives of the decedent cannot be sued thereon at law ; and if the judgment creditor in such a case comes into the court of chancery to obtain satisfaction of his debt out of the personal estate of the decedent, that court, acting upon the principle that equality among creditors is equity, will not give him a preference in payment over other creditors.

A release of one of two joint debtors discharges the original debt as to both ; and a covenant not to sue both has the same effect as a release of both, to avoid circuity of action. But a covenant not to sue one of them does not, at law, operate as a release of the debt as to either ; so that the original indebtedness remains unchanged at law.

Where a party consents to examine a witness upon his voir dire, and the witness declares he has no interest in favor of the party calling him, it is too late for the party so examining him to object to his testimony afterwards, upon the evidence of others that he is interested.

A creditor who has a claim upon the estate of a deceased person whose estate is not sufficient to pay all his debts, is not a competent witness to diminish the claim of another creditor of the estate who is entitled to priority in payment. Nor can a husband be a witness, in such a case, where his wife is interested in diminishing the amount of the claim of the prior creditor upon the fund, although the husband has no personal interest in the question.

THIS case came before the chancellor for hearing upon April 7. the pleadings and proofs. The facts in the case, so far as they are necessary to understand the decision, are stated in his opinion and in the previous reports of the case in this court, and in the court for the correction of errors.

*J. Blunt & S. Stevens,* for the complainants.   Nehemiah Rogers, as executor, must be decreed to account for all the assets of his testator, A. Gracie, according to a legal course of administration as the law was prior to 1830. The assignment and release of the 27th April, 1824, did not change the original indebtedness of A. Gracie, whether consisting of judgments, bonds, or parol contract.   The judgment of A. Hosack is entitled to priority over the demand of N. Rogers, which is upon a parol contract.   If the covenant in the assignment of April 27, 1824, be resorted to by N. Rogers to raise his debt to the rank of a specialty, it is still but a covenant debt, and inferior in rank to the judgment in favor of A. Hosack.   Samuel Rogers is a party defendant in the suit and interested in its results, being entitled to call upon N. Rogers to account for any sums recovered from the estate of A. Gracie ; and his deposition must be suppressed.   (*Allen* v. *Blanchard,* 9 *Cowen,* 631.)   The tranfers to Samuel Rogers by A. Gracie can be sustained only by being deemed payments on the debts due to N. Rogers & Sons, and ought to be deducted from the amount thereof ; and if not so sustained, then Samuel Rogers was accountable to N. Rogers as executor for the sum · paid under the Spanish treaty, and the latter should be charged with this debt which he has suffered to become irrecoverable under the statute of limitations.   N. Rogers, as executor, claiming a right of retainer, is to be charged with the receipts by his partner Samuel Rogers, from the estate of A. Gracie, i. e. Nov. 11, 1824, $6544,41, and the Spanish claim, say, $3500. N. Rogers having admitted that he has in his hands a large surplus of funds belonging to the estate of A. Gracie beyond any debt claimed by him, he ought to be decreed forthwith to bring into court the amount of the judgment of A. Hosack, to abide the event of the suit.   (*Blake* v. *Blake,* 2 *Sch. & Lef.* 26.   *Yare* v. *Harrison,* 2 *Coxe's Ch. Cases,* 377.   *Vigross* v. *Binfield,* 3 *Mad. R.* 62.   2 *Sim. & Stu.* 217.)   The English creditors did not become parties to the assignment of 1824, and their debts are now barred by the

statute of limitations.   If they be deemed parties to said assignment, they are only creditors under covenant, and must be postponed to the judgment of A. Hosack.

*A. G. Rogers & J. I. Roosevelt,* for N. Rogers.   The testator, A. Hosack, having become a party to the assignment which was based upon the debts as they stood at its date, and having also accepted a dividend computed upon the footing of the schedule debts, waived the judgment recovered by him in the interval between the preparation of the instrument and its final execution, and his executors cannot now set it up merely to give to his claim the character of a judgment debt in the distribution of A. Gracie's estate.   If not waived by thus accepting the assignment, it was discharged by executing the release to two of the defendants against whom it had been recovered.   (1 *Bos. & Pul.* 630.   10 *John. Rep.* 518.   7 *Id.* 209.   9 *Cowen,* 37.   2 *John. Rep.* 228.   2 *Saund.* 48, n. (*a.*)   6 *Taunt.* 289.   1 *Mars.* 603, S. C.   12 *Mod.* 548.   1 *Atk.* 294.   *Solly* v. *Forbes,* 2 *Brod. & Bing.* 38.   18 *John. Rep.* 459.   16 *Id.* 172.)   If neither waived nor discharged by these acts, it was extinguished as against the personal estate of Mr. Gracie by his death, leaving his co-defendants surviving, and could only be enforced, if at all, against his representatives in a court of equity, and of course without any right of priority.   Such of the creditors as became parties to the assignment must in judgment of law be deemed to have accepted its provisions as a substitute for their existing demands, and must therefore be confined to the assigned fund, and to the personal covenant of Mr. Gracie ultimately to make up the deficiency.   The only condition upon which his engagements for such deficiency were made to depend was, the bona fide adjustment and recovery of the French claims, whatever might be the sum allowed for their settlement—it not being the intention of Mr. Gracie to compound with his creditors, but merely to postpone the time of payment ; in other words, when that period arrived, he intended to stand in the same situation as to the amount of

his indebtedness as if he had not been discharged, by taking on himself the risk (which he considered nothing) of its sufficiency, and guaranteeing such sufficiency. (3 *John. Rep.* 375. 16 *Id.* 172. 8 *Id.* 394.) All the creditors, therefore, who became parties to the instrument, stand, so far as the dignity of their demand is concerned, upon the equal footing of specialty creditors, for the full amount of the balance of their debts. Mr. Rogers, consequently, as executor, is entitled to retain the balance due him as against all the rest, all being of the same degree; and even if the covenant of A. Gracie was to pay his debts only to the extent of the moneys he might recover from France, still Mr. Rogers would be entitled to retain to the full amount of his claim, if it did not exceed the whole amount of the French recovery, his right being also established by the decree of the court of errors in the most express terms.

William Gracie claiming to be a creditor of the estate of his father in the triple capacity of bond holder, and administrator and legatee of Miss Rogers, (an alleged creditor,) and of next of kin of his mother, who was the residuary legatee of his father, and being also responsible as debtor in his character of heir of his mother, who as executrix had received and appropriated part of the assets of his father's estate, is palpably interested in reducing the claim of Mr. Rogers, and is therefore an incompetent witness. Charles King, being a creditor in his character of executor of Rufus King, is also an incompetent witness. James G. King, being a creditor, both in his own right and as executor of Rufus King, is also an incompetent witness. Samuel Rogers is a competent witness, and the objection to him, if otherwise valid, is now too late. (20 *John. Rep.* 357. *Phil. Ev.* 96. 1 *Dal.* 272. 1 *Mass. R.* 219. *Peake's Ev.* 186. 10 *Mod.* 193. 2 *Hayw.* 145. 3 *Day,* 214. 15 *East,* 57.) The English creditors having neglected to execute the articles of 27th April, 1824, cannot claim the benefit of the covenant contained in them. And if they could, being merely simple contract creditors, they are barred by the statute of limitations. The two sums receiv-

ed by Samuel Rogers were received on his individual account, and cannot therefore be charged as payments on the debt of N. Rogers & Sons. The special promise made by A. Gracie to pay the debt of N. Rogers out of the first moneys, from any source, that he could ever command, was a valid and binding engagement.

*S. J. Wilkin,* for the English creditors. James G. King is a competent witness to prove the facts which would admit other creditors to participate under the bond of April 27, 1824. As creditor, if entitled himself under the bond, his interest is against those who call him, and he is competent.

If not entitled himself, he has no interest in the suit, and he is competent. As interested in the estate of Rufus King, also, his interest is against those who call him. Besides, he has no interest under his father's will. His father appearing to have made a will, those who object to this witness as interested under it, must show the interest, by producing the will.

The creditors who signed the release of June 26th, 1824, are entitled to the benefits of the covenant of April 27th, 1824, on the following grounds : That deed names these creditors in the schedule A., annexed thereto ; and it only precludes them upon their neglect or refusal. Neglect and refusal require notice and request ; none such is proved. (2 *Paige,* 490.) The creditors in question by signing the release of June 24th, 1824, fulfilled the substantial condition of the indenture of April 27th, 1824 ; and any mere informality, varying from a literal compliance, will not be permitted in a court of equity to forfeit its provisions. These creditors, the assignees under the deed of April 27th, 1824, and the other creditors provided for in that deed, have treated these creditors as fully entitled under that deed. All parties have acted in compliance with the arrangement of which that deed was part. These creditors are therefore to be deemed parties to it, both as bound by it and entitled under it. (*Spotswood* v. *Stocksdale, Coop-*

1840.

Hosack
v.
Rogers.

*er's Rep.* 102.) Under the provisions of the deed of April 27th, 1824, all the debts of the parties thereto (including the signers of the release of June 26th, 1824,) released their debts at law, and come in as specialty creditors under the covenant in the deed of April 27th, 1824, and are all entitled to stand as specialty creditors to the extent only of their rateable share of the recovery of the French funds. If the releases above mentioned do not discharge A. Gracie at law, and do leave the debts undischarged, still as to the debts not originally under seal, each creditor (originally by simple contract) is entitled to stand as specialty creditor according to the rateable proportion of the French recovery; and they must rank on these amounts both as to a retainer by the executor and a payment to themselves. That covenant would not authorize a recovery by every creditor of his full debt, when only enough was realized from the French funds to cover one debt. And it would not require each creditor to wait until enough was realized to pay the whole. The true construction is, that upon each recovery from the French funds, each creditor is entitled to a recovery for his share of it, if not paid over in reasonable time; and this is the extent and limit of each creditor's right as a covenant creditor. (*Newl. on Con.* 414. *Ellis on Debtor and Creditor*, 204. 1 *Story's Eq.* 370, 378, 379. 4 *East*, 372.) Nehemiah Rogers as executor claiming a right of retainer is to be charged with all his receipts from the estate to the extent of his retainer. And the creditors are entitled to an inquiry as to his use or investment of the funds and to interest, if on such inquiry it shall be just.

*D. Lord, jr.* for Don Zavala. Nehemiah Rogers, as executor, must be decreed to account for all the assets of his testator, A. Gracie, according to a legal course of administration as the law was prior to 1830. In taking such account, the specialty debts are entitled to a preference next after judgment debts and before simple contract debts. The debt to Don Zavala is a specialty debt, and although

not yet proved as such, may be so proved before the master. If the covenant in the deed of April 27th, 1824, is resorted to by the defendant N. Rogers, to raise his debt to the rank of a specialty, it is only so elevated according to the legal effect of that covenant. Under that covenant, which is several to each creditor in respect of his debt, the creditor can only recover his rateable proportion of the money received from the French claims mentioned in the assignment. Nehemiah Rogers can only rank as a specialty creditor to that amount, and his retainer as such is so limited until all the specialty debts are satisfied, and this should be so declared in the decree. Against the amount to which this right of retainer of N. Rogers, as a specialty creditor, is limited, all the previous receipts from A. Gracie's estate must be applied. And as to the residue of N. Rogers' debt, it must be treated as a simple contract debt, and postponed until all the judgment and bond debts are paid out of the general assets of A. Gracie's estate. The transfers by way of gift to Samuel Rogers by A. Gracie, can only be sustained by being deemed payments on the debts of N. Rogers & Sons, and ought to be deducted from the amount of their debt at the date of the covenant.

THE CHANCELLOR. This case has frequently been before the court in various shapes, and the facts upon which the principal question between the complainants and Nehemiah Rogers, the surviving executor of Archibald Gracie, as to the right of priority of payment rests, are stated in the reports of the case in this court, and in the court for the correction of errors. (6 *Paige's Rep.* 415, *and* 18 *Wendell's Rep.* 319.) It is not necessary, therefore, to recapitulate them here. As the court for the correction of errors decided that there was no specific appropriation of the French fund for the payment of the debts of such of the creditors of the copartnership as should consent to release the two junior members of the firm, the whole of that fund as well as other funds of the estate of Archibald Gracie, which have come to the hands of N. Rogers, as his ex-

ecutor, must be considered as general assets be'onging to the estate ; and must be accounted for and distributed in the due course of administration, according to the legal priorities of the several creditors as they existed at the death of A. Gracie. The question to be decided on this part of the case, therefore is, whether after the release of the two junior members of the firm and the death of the senior member, the personal representative of A. Gracie, the senior member, could have been sued at law and a recovery had thereon against him upon the original joint contracts, or debts of the three copartners ; or whether the remedy must not be sought upon the new contract made by A. Gracie with the several creditors at the time he consented to the arrangement for the release of his copartners, and that he would himself continue responsible for the debts. This, in itself, is a mere technical question, as there is no doubt that in equity A. Gracie was still liable to the creditors in some form, independent of his express covenant to pay the debts out of the French fund. Upon that technical question, however, the important right of the complainants, to a priority of payment before all other creditors, depends. For the doctrine of this court is, that equality among creditors is equity. And even before the revised statutes, if for any cause the creditor could not secure his common law preference, either by retainer or by a suit at law against the personal representative of the deceased debtor, upon a security of a higher class, this court would only aid him so far as necessary to give him his rateable share in the distribution of the estate in common with other creditors. The question then arises, whether these complainants after the death of A. Gracie, could have brought an action of debt at law, or a scire facias, against his personal representative, upon the original judgment recovered against him and the two junior members of the firm jointly ; or whether the remedy must not have been founded upon the new contract as altered by the release, and the agreement for the continuing liability of the senior member of the firm. It may be proper here to remark that upon a motion

in a former stage of this suit the judgment in favor of these complainants appeared to have been recovered against all three of the copartners. subsequent to the execution of the release. If that were in fact so, the right of action upon the judgment would of course have survived against the junior partners only, at law, and no relief could have been obtained against the personal representative of A. Gracie, the defendant, except in equity. That, of course, would in this court put an end to all claim of priority on the part of the complainants. It is now alleged by them, however, and I think they have succeeded in showing the fact to be, that they actually signed the agreement, which operated as a release of the two junior partners, subsequent to the recovery of the judgment; although it was dated and was executed by other creditors before that time.

It is a general principle that the release of one of two joint debtors discharges the original contract as to both; and that a covenant not to sue both has the same effect, to avoid circuity of action. A covenant not to sue one of two joint debtors, however, unless it clearly appears from the instrument that it was intended to discharge both, does not at law discharge either. So that a suit may be brought at law upon the original contract against both, if it was a joint contract, and against the one to whom the covenant was not given, if the contract was joint and several. In other words, it is in such cases construed to be a covenant merely, and not a release; so that the original contract against both debtors remains unchanged at law. (*Hatton* v. *Eyre*, 1 *C. Marshall's Rep*. 603. *Dean* v. *Newhall*, 8 *Term Rep*. 168. *Claggett* v. *Salman*, 5 *Gill & John. Rep*. 314. *Garnett* v. *Macon*, 6 *Call's Rep*. 341.) The cases in which the release of one joint debtor has been held to be a release of the original contract as to both, has indeed generally arisen when there was no agreement by the other party for his continuing liability. And I have not been able to find any case, decided in a court of law, where the question has directly arisen as to the effect of such a re-

lease of one debtor, with the consent of his co-obligor, under an agreement for the continuing liability of the latter, upon the original contract itself. Upon principle, however, it seems to me such an arrangement, which necessarily turns what was originally a joint contract by two parties into a separate liability of one of them, actually forms a new contract as a substitute for the old one; so as to give to the creditor his right of action upon this new contract, whether such new contract is express or implied. It is, in fact, what in the civil law is called a *novation*, or the substituting a new contract, between some or all of the parties, in the place of the old one; which operates as an extinguishment of the old contract, and leaves the creditor to his remedy upon the new contract only. The case of *Benson* v. *Kincaid*, (3 *Pennsylv. Rep.* 57,) does not decide this point. For a question of mere legal right, as contradistinguished from the equity of the case, cannot well arise in the courts of Pennsylvania; where the legal and equitable jurisdictions are so blended together that no distinction is made between the legal and equitable rights of parties in a suit. Besides, in that case, as the deceased debtor was merely a surety for the survivor, who might, as survivor, be proceeded against separately, upon the judgment, to enforce the lien of such judgment, even his assent was not necessary to prevent the release of his surety's property from operating against him as survivor. The creditor having the technical right to proceed against his property alone, as the surviving debtor, and he having assented to the agreement to release the property of the other, the only question which arose was upon the technical effect of the release, upon the lien of the judgment on the property of the survivor. And certainly it could not have the technical effect to prevent the releasor from proceeding against the survivor, in the same manner that he could have done if the release had never been executed. In the present case, however, if the release of the two junior partners had not been executed, and no new agreement had been made, it is clear the executor of the senior partner could not

have been sued at all in a court of law. And the complainants must either have proceeded against the survivors and their property solely in a court of law, or he must have come into this court, upon an allegation of their insolvency, to reach the estate of A. Gracie, in the hands of his personal representative ; in which case, as they would have had no legal preference in payment, this court would not have given them a preference here. My conclusion, therefore, is, that the original joint contracts of the three copartners were novated or extinguished by the release, and were turned into new contracts against A. Gracie, the senior partner, solely and individually. And that all the creditors who executed the release, were at his death specialty creditors, under his covenant to pay the balance of their debts which should not be satisfied by the proceeds of the assigned property. The effect of that covenant was, that A. Gracie, upon the recovery of the French fund, would pay to each creditor the whole balance due him ; and not merely to pay it out of the French fund if that should be sufficient for that purpose. At least I can give no other construction to that covenant consistently with the decision of the court for the correction of errors, by which I am bound in this case. For if the intention of the parties was merely to appropriate that fund, and that alone, to the payment of the balances of all the creditors who released the junior partners, and not to stipulate with each for the sufficiency of that fund, it was a specific appropriation which would have given to each a pro rata distribution according to the settled principles of equity.

The question whether the English creditors can come in also as specialty creditors, by virtue of this covenant, depends upon the question whether they could have sued Archibald Gracie upon the covenant if he was now living. And upon a careful examination of the terms of the assignment, and considering it as a personal covenant with each creditor, and not an assignment of the fund to such as should actually sign the instrument, so as to make it a specific appropriation, I see no difficulty in the English credi-

tors sustaining an action upon the covenant, if not in their own names at least in the names of the assignees. The funds assigned to Wilkes, Goodhue and J. G. King, were not to be paid over by them to the creditors who should neglect or refuse to become parties to the assignment within the times prescribed therein. And the English creditors did not in fact sign their names to the original assignment ; though if the testimony of J. G. King, can be received as legal evidence in their favor, they did what was tantamount to it, and actually received their dividends under the assignment. And as all parties appear to have acquiesced in this manner of transacting the business, and in the distribution of the assigned fund, for more than ten years before the present controversy commenced, I think it must be considered as a substantial compliance with the agreement, and as an acceptance of an assignment on the part of the English creditors. The difficulty however of their being able to sue upon this covenant of Archibald Gracie in their own names, is that the covenant is not made with all the creditors of A. Gracie and sons, mentioned in schedule A., who should assent to the assignment and accept dividends under the same. But he covenants with the parties of the second and third parts, which parties of the third part are declared to be such of the creditors mentioned in the schedule A., who should become parties to the indenture ; that is, as I understand it, who should actually sign and seal the name. J. G. King, however, is expressly covenanted with, as one of the parties of the second part, and that of itself would have enabled him to have sued upon the covenant either in his own name or in the names of himself and Wilkes and Goodhue, for the balance due to the firm of King & Gracie. And as this covenant to pay the balances to all of the creditors mentioned in Schedule A., is made with the parties of the second part as well as parties of the third part, I think the parties of the second part might also sue upon the covenant as trustees for the other English creditors who came in under the assignment, and released the two junior members of the firm ; and who

neither neglected or refused to become formal parties thereto, as they never had the opportunity to see or sign it. Upon this ground therefore I shall hold the English creditors entitled to the privileges of specialty creditors also, in the administration of the estate of Archibald Gracie.

1840.

Hosack
v.
Rogers.

The result is, in conformity with the decision of the court for the correction of errors, that N. Rogers is not to be put upon a perfect equality with other creditors with respect to the French fund. He is to be permitted to retain for the debts in which he had an interest, as mentioned in schedule A., in preference to any of the other creditors mentioned in that schedule, and in preference to other specialty creditors of A. Gracie. And the other creditors mentioned in schedule A., are to be paid pro rata as between themselves and other specialty creditors, and in preference to creditors by simple contract.

A reference must therefore be made to master Ullman or master Sidell, to take an account of the debts due to any of the parties to this suit, or any other creditors of the estate of A. Gracie, whether by judgment or decree, by specialty, or otherwise, and to state the class to which such debts belong; placing the debts of the parties to this suit in the classes to which they belong as above declared; and directing the several creditors to come in and prove their debts within the time fixed by the master, in conformity to the statute on that subject. And the master is also to state the account of the executor Nehemiah Rogers, charging him with interest as shall be equitable; with liberty to make a special report as to the fund in his hands, and of the amount due for which he is entitled to retain; to the end that the surplus, if any, may be brought into court and invested to abide the event of the suit.

The motion to suppress the testimony of Samuel Rogers must be denied. The complainants' counsel having consented to his examination on his voir dire and he stating that he had no interest in behalf of the party calling him, it was too late to make an objection to him afterwards, founded upon the testimony of others. His testimony

VOL. VIII. 31

must, therefore, be retained, subject to all proper objections to his credibility. I see no legal objection to Charles King as a witness, as he does not appear to have any personal interest whatever in these conflicting claims, or in increasing or diminishing the fund in the hands of N. Rogers, the executor. William Gracie shows that he would have an interest in increasing the fund if the amount of the estate was sufficient to pay off the debts so as to leave any thing for distribution. He also has a claim as a bond creditor of A. Gracie, which claim had not been released to the defendant Nehemiah Rogers, the executor, when he was examined as a witness. He had therefore a direct interest in reducing the amount which N. Rogers was to retain for his debt, and to increase the fund in the hands of the executor. His deposition must therefore be suppressed. James G. King was a competent witness in relation to the English creditors having accepted the terms of the assignment and discharged the junior members of the firm ; as in testifying in support of their claims to come in as specialty creditors, under the covenant, he was testifying against his interest. But as his wife is interested in reducing the claim of N. Rogers, he cannot be a witness as to any matter which is for her benefit, although he has no personal interest in the estate of Rufus King. He has also an interest against Rogers, as one of the former firm of King & Gracie of Liverpool. So much of his testimony therefore as relates to moneys supposed to have been received under the Spanish claim, or for the freight of the ship America, by N. Rogers, or any member of the firm of Nehemiah Rogers & Sons, must be suppressed.

In relation to the freight claim, received by S. Rogers, I see nothing at present to charge N. Rogers with it, or the firm with which he was once connected. It appears to have been received by Samuel Rogers as an individual. But if the firm was in any way benefitted by that money it ought to go to reduce the claim of N. Rogers to retain beyond the amount of the time and expenditures necessary for the collection of the money. A. Gracie was insolvent

and had no right to give away his property to the injury of his creditors. I shall therefore permit the master to take further testimony in relation to that money, and to reduce the claim of N. Rogers accordingly if it shall appear that he should be charged with it, either on the ground that he or his firm received it, or that he could have legally collected it of S muel Rogers in his character of executor of Archibald Gracie.

* The question of costs, and all other questions and directions are reserved until the coming in of the master's re-report.(a)

---

(a) Affirmed, upon appeal to the court for the correction of errors, in December, 1840.