The opinion of the court was delivered by
Thurman, J.
The first point made by the defendants, is as follows :
“ The decree of the Supreme Court, being between the same parties, and in relation to the same subject-matter, is a complete bar to this suit.”
But the decree contains a saving in these words :
“ Saving, however, whatever right the said Charlotte Upjohn may have in equity, to subject said premises to the satisfaction of one-sixth of the balance due on said mortgage debt, or to recover the same against her co-defendants.”
It is argued, however, that this amounts to nothing, so far as a right to proceed in equity upon the mortgage is concerned ; that no such absolute right is recognized; that the saving is only of “ whatever right the said Charlotte Upjohn may have, etc.,” and that the previous findings and terms of the decree show that she has no such right. But this, in our ^opinion, is a very inadmissible construction. It requires us to impute to the court the vain thing of inserting a saving which it intended should be of no use. Now, it is as much our duty to give effect to the saving .as to any other part of the decree; and we find no difficulty in doing so upon just principles of construction. The court evidently meant *16 that whatever right in equity Charlotte Upjohn would have had,, to subject the mortgaged premises to the satisfaction of her one-sixth of the mortgage debt, had the decree not been rendered, should be saved to her notwithstanding the decree. It was not necessary to decide that she had, or had not, such right. It was sufficient to leave her the ability to enforce it if it existed. This was done by the saving clause ; the effect of which is to except her possible rights therein mentioned, from the operation of the general language previously used.
The next point of defense is thus stated:
“ When five out of six joint creditors unite in a release of their debtor, the sixth is also concluded, and the release binds all the joint creditors.”
Were this admitted, it would not affect-the present controversy;. for, in this case, there was no release, or attempt to release the debt, by anybody. No one supposed that. The very release that is relied on, shows the understanding to have been that the debt would subsist entire, and that the mortgage also would subsist as to-all the property not released from its lien.
But we are not prepared to say that one or more of several joint creditors, between whom no partnership exists, can release the. common debtor so as to conclude their co-creditors who do not assent to such release. It is true, they may defeat an action at-law, but it does not follow that a recovery in equity can not be had.. At law, joint creditors must join in the action; and all must recover, or none can. Hence, if part of them are barred, all are. But the forms of equity procedure require no such joinder when justice would be defeated by it. It may be admitted, that, as a general rule, joint creditors can not, by a division between themselves, ^acquire a separate right of action against the debtor, either at law or in equity; but where the debtor himself procures the release of a jiart of them, we do not see how he can object to the others proceeding against him in equity.
The case of Joy et al. v. Wurtz et al., 2 Wash. C. C. 266, cited by defendant’s counsel, is not opposed to these views. In that ease, the complainants had released one of two joint debtors, siypposing the other would'remain bound. Upon discovering that the legal effect of the release was to discharge both debtors, they filed their bill to set it aside, because of their misapprehension of the law. The court dismissed the bill on the ground that equity does not re *17 lieve against a mere mistake of law. The case is in no wise analogous to the present. Neither is Hosack v. Rogers, 8 Paige, 229; which is also relied on by defendants. It, too, was a case of a release of part of several joint debtors. The question, what power one joint creditor has to extinguish the rights of his co-creditor, did not arise in the case.
The next proposition of the defendant is, that “ if one of several joint creditors may release a debtor, on receipt of a portion of the debt, he may release a security given for the payment of the debt, on a promise to pay.” We have denied any right in Charlotte Upjohn’s co-creditors to extinguish her claim to one-sixth of the debt, so as to preclude her from relief in a court of equity; and, for the same reasons, we must hold that they had no right to release her interest, or estate, in the mortgage security.
Again. Before the execution of the so-called release, the condition of the mortgages executed by Bonsall, had- been broken by non-payment of the mortgage debts. The legal estate had therefore vested absolutely in the mortgagees, redeemable only in equity. As tenant in common with her co-mortgagees, Charlotte Upjohn held an undivided sixth of this legal estate. How has she been divested of it ? Not by payment or release of the mortgage debts, for there has been neither. Not by her own release of the mortgage security, for she has never executed any such instrument. Not by *any agreement, or act, of hers; for she has made no agreement, done no act, to destroy her rights. Unless, then, a third person, without her consent, can divest her of her estate, we do not see how she has lost it. We are not disposed to admit such a power in a third person.
It is next argued, that:
“ Mrs. Ewing being a bona fide purchaser from Brewster, after • the execution and delivery of the release, it would be a fraud upon_ her rights to allow the complainant to evade the release, and subject the land to the payment of the mortgage debt, or any part of it.”
Certainly, Mrs. Ewing can not be called a bona fide purchaser without notice; for the mortgages were on record when she bought, and no release by Charlotte Upjohn had been executed. Nor do we find any evidence of fraud that should estop the complainant to prosecute this suit. We discover no sufficient ground for the suggestion, that she encouraged Mrs. Ewing to purchase under the *18 idea that the premises were released. We see nothing in her words, or acts, to sustain this point of the defense.
The only remaining ground taken by the defendants, is thus stated:
“ The debt, if any, is due from Bonsall’s estate to six persons jointly, and no one of the six can maintain a separate suit in equity to foreclose the mortgages, for one-sixth, or other fractional part of the joint debt.”
In support of this proposition, Lowe v. Morgan, 1 Bro. Ch. 369, is cited. The case was this : A mortgagee of a share in the Covont Garden play-house assigned the mortgage to a trustee, for the benefit of three persons, equal and joint beneficiaries of the trust. One of the three filed a bill of foreclosure. A decree was refused, because the two others were not made parties. We are not disposed to question the correctness of this decision. No reason being given why the other beneficiaries were not parties, it may have been proper enough to refuse a decree. But here, the bill, supported by the proofs, shows a sufficient reason for not ^making the co-mortgagees of the complainant parties,'and removes the objection sustained in “ Lowe v. Morgan.” And we have already said, that although joint creditors may not, of their own mere motion, divide their claim so as to give to each a separate right of action; yet, when the debtor obtains the release of a part of them, the others may, in equity, collect their proper share of the debt. In this case, the debt is due to six persons; but the complainant is, confessedly, entitled to one-sixth of it. Five of the six have released their security. The complainant has released nothing. She has, therefore, a right to proceed by bill of foreclosure to obtain payment of her one-sixth of the debt; and a decree must be ■entered accor dingly.