COLLIER, respondent, *v.* FIELD et al., appellants.

RELEASE — *consideration — seal.* A release that is executed for a consideration and does not affect real estate, is valid without a seal.

RELEASE — *judgment — mortgage — release of one obligor.* The written release for a valuable consideration of one of the joint and several makers of a promis-sory note from all liability on the judgment entered in the district court thereon, and the mortgage securing the payment of the note, satisfies the judgment and releases all the judgment debtors and mortgagors.

RELEASE — *repugnant proviso void.* The proviso in a release of one judgment debtor, which states that the liability of the other judgment debtors shall not be affected thereby, is repugnant to the release and void.

SALE UNDER EXECUTION SET ASIDE — *fraud.* The sale of property under an execution to satisfy a judgment for the foreclosure of a mortgage, after the judgment creditor has released one-half of the property from the mortgage and judgment, and received one-half of the judgment, is fraudulent and must be set aside by the court.

CASE AFFIRMED — *interest.* The case of *Davis* v. *Hendrie, ante,* 495, holding that parties could contract for a higher rate of interest than ten per centum per annum after the maturity of the note, affirmed.

PROMISSORY NOTE — *interest until paid.* A promissory note, in which the maker agrees to pay a certain sum, " on or before " a certain day, " with in-terest at the rate of three per cent per month until paid," does not provide for the rate of interest after its maturity on that day, and the holder can then collect, under the statute, interest at the rate of ten per centum per annum.

*Appeal from the First District, Jefferson County.*

IN May, 1872, the court, MURPHY, J., overruled the motion of Ervin and Metcalf to set aside the sale of certain property by the sheriff under execution, and they appealed. The facts are stated in the opinion.

PAGE & COLEMAN, for appellants.

Where two or more debtors are jointly and severally bound, a release of one is a release of all. Story on Prom. Notes, § 425; Byles on Bills, § 232; Brightly's Fed. Dig. " Release ;" *Nicholson* v. *Reville*, 4 Ad. & El. 675; *Hoffman* v. *Dunlap*, 6 Cal. 183; *Tuckerman* v. *Newhall*, 17 Mass. 581.

Such a release need not be under seal. The rule of the ancient courts in this respect has been changed. 1 Pars. Notes & Bills, 248; *Benjamin* v. *McConnell*, 4 Gilm. (Ill.) 536. Where a consideration is expressed, or proved to have passed, a seal is immaterial. *Ayer* v. *Ashmead*, 31 Conn. 447; *Milliken* v. *Brown*, 1 Rawle, 391.

A general release can be restrained by the recital, which refers to an enumeration of the debts extinguished, never to the parties affected thereby. A proviso in a release that other parties shall not take advantage of it is void. Bacon's Abr., Release, " G ;" *Owen* v. *Homan*, 20 L. J. ; *Wiggin* v. *Tudor*, 23 Pick. 434; *Rice* v. *Webster*, 18 Ill. 331.

The release extinguishes the obligation, and there must be a new and separate promise to pay to bind the co-obligors. *Stearns* v. *Tappin*, 5 Duer, 244; *Hoosac* v. *Rogers*, 8 Paige, 229.

Equity will not relieve except where there is fraud or unfair practices. *Joy* v. *Warz*, 2 Wash. C. C. 266.

The release in this case cannot be construed a covenant not to sue. No right to bring a suit against all the debtors is reserved in the release. *Bronson* v. *Fitzhugh*, 1 Hill, 185; *Ayer* v. *Ashmead*, 31 Conn. 447.

Parol testimony is inadmissible to contradict or vary the terms of a release under seal. *Bronson* v. *Fitzhugh*, 1 Hill, 185.

In this case the releases are under seal, and the whole debt was extinguished thereby.

The sale should have been set aside on other grounds. The execution was for the amount of the original judgment, whereas the release acknowledged a payment of $1,500. The sheriff was not an officer of the chancery court, and

had no authority to make the sale. The sheriff advertised for sale the property of Field, which had been released.

G. G. SYMES, A. G. P. GEORGE and W. F. SANDERS, for respondent.

There is no appeal from the judgment. Setting aside a sale is in the discretion of the court, and will not be done unless the substantial rights of the parties have been affected. The sale can only be set aside for errors appearing in the record. The evidence heard in the court below was not saved by a bill of exceptions.

A sale of real estate, after the report of sale has been returned and certificate of sale delivered, cannot be set aside except by bill in equity. Mere irregularities and errors in the proceedings of the court will not invalidate a sale. 1 Dan. Ch. 168.

The release only released Field's portion of the debt; it being a several liability, the whole debt is not released. Acts 1865, 454; Story on Prom. Notes, §§ 445, 550.

Our statute makes this a several contract. The release of one on a joint and several contract does not release all, where the contrary is expressly stipulated.

This court cannot reverse the decision of the court below, without hearing the evidence on which the court below based its decision. Injustice would be done by such a ruling.

WADE, C. J. This was an action to foreclose a mortgage, upon certain mining property, situate in Jefferson county, given by defendants to plaintiff, to secure the payment of two certain promissory notes, as follows :

"SPRINGVILLE, *July* 19, 1869.

"On or before the first day of June, 1870, for value received, we jointly or severally promise to pay C. T. Collier, or order, the sum of four hundred dollars, in good bankable gold dust, at eighteen dollars per ounce, with interest at the rate of three per cent per month until paid.

"R. B. FIELD,
"WM. M. ERVIN,
"W. H. METCALF."

" SPRINGVILLE, *July* 19, 1869.

"On or before the first day of August, 1870, for value received, we jointly or severally promise to pay C. T. Collier, or order, the sum of fifteen hundred dollars, in good bankable gold dust, at eighteen dollars per ounce, with interest at the rate of three per cent per month until paid.

> "R. B. FIELD,
> "WM. M. ERVIN,
> "W. H. METCALF."

The defendants were duly notified of the pendency of the action, and made default, whereupon at the October term of the district court for said county, to wit, on the 12th day of October, 1871, a decree was rendered in the action in the usual form, ascertaining the amount due from defendants to the plaintiff, on said notes, to wit, the sum of $3,025.70, and, in default of payment, ordering a sale of the mortgaged premises.

Afterward, on the 8th day of November, 1871, the plaintiff filed with the clerk of said court a release of defendant R. B. Field, as follows.

"I do hereby certify that the sum of $1,528.30 has been paid me by R. B. Field, and for which sum I do release the said Field from all liability on the judgment recovered on the 12th day of October, 1871, and I do further stipulate and agree, that the undivided one-half of the mining ground, mentioned in a certain decree, signed on the 12th day of October, 1871, is also released, and the title now of the same vests in R. B. Field, said decree having been entered in the above-entitled action. But this stipulation does not release any other parties mentioned in the decree, nor any other property mentioned, save and except the undivided half the mining ground.

> "C. T. COLLIER."

" Witness: A. G. P. GEORGE."

At the same date, the following release of the mortgage was filed in the recorder's office of Jefferson county, to wit:

"I, C. T. Collier, of Jefferson county, Montana Territory, do hereby certify that a certain mortgage, bearing date the 19th day of July, 1869, made and executed by R. B. Field, Wm. M. Ervin and W. H. Metcalf, and recorded in the county recorder's office of Jefferson county, in Book A of mortgages, on pages 187, 188, and filed on the 20th day of July, 1869, has been paid so far as the same relates to R. B. Field, and I do hereby consent the same be discharged of record, so far as the undivided one-half of the placer mining claims are *mentioned*, and I do further consent, hereby, to release the said R. B. Field from all further liability on said mortgage, and on the two joint and several promissory notes of even date with said mortgage, and signed by the aforesaid parties who signed said mortgage, and all of the undivided one-half said mining ground designated in said mortgage is fully released, and the title to the same to vest in R. B. Field. But this satisfaction of mortgage is not to release any other parties to said mortgage or notes, or any other property mentioned in said mortgage, save and except the party before named and the property hereinbefore designated.

"In witness hereof I have hereunto set my hand and seal this 8th day of November, A. D. 1871.

                                "C. T. COLLIER. [L. S.]

"In presence of A. G. P. GEORGE."

Which release was duly acknowledged and recorded in the recorder's office of said Jefferson county.

Afterward, on the 25th day of November, 1871, an order of sale was duly issued for *all* the mining ground mentioned and described in said mortgage and decree, and for the full amount found due upon said notes, no credit having been given on account of the payment of $1,528.30 made by the defendant Field, and on the 27th day of December, 1871, all the mortgaged property was sold by the sheriff, at public sale, to plaintiff Collier for the sum of $3,200, he being the highest and best bidder therefor.

Thereupon, at the May term of said district court, to wit:

On the 13th day of May, 1872, the defendants Ervin and Metcalf filed their motion to set aside the sale made on the 27th day of December, 1871, assigning as cause therefor, among others, the following reasons :

1. The original debt was extinguished before the issuance of the execution or order of sale herein.

2. Before the issuance of said order of sale, these defendants were discharged from the judgment or decree upon which it was founded.

3. At the time of the sale there was no subsisting indebtedness of these defendants to plaintiff, by virtue of the judgment or decree rendered herein, or by reason of any claim or claims upon which such judgment or decree was founded.

4. The debt, upon which said judgment or decree was founded, had been fully paid and discharged.

This motion was overruled. by the court, to which ruling the defendants duly excepted, and appealed to this court.

1. The questions presented by this appeal relate to the legal effect of the release of the defendant Field, as shown by the releases herein set forth, upon the defendants Ervin and Metcalf, and to the necessary consequences that follow such release. The notes, upon which the judgment was rendered, were joint and several promissory notes, signed by the defendants, Field, Ervin and Metcalf. After the rendition of the judgment, and before the order of sale was issued, the plaintiff, for the consideration of $1,528.30, paid to him by Field, released Field from all his liability on account of said notes and judgment, reciting, in the release, that the discharge of Field should in no manner affect the liability of the defendants Ervin and Metcalf.

The first release, herein mentioned, was filed with the clerk of the court, and is not under seal. The second one, however, which is a release from all liability on account of the notes and mortgage, and necessarily a release from the judgment and decree rendered thereon, is a formal instrument, properly sealed, witnessed, acknowledged and recorded, and is of the same character of instrument as the

mortgage which it discharges, so that the question of the validity of a release under seal, or not under seal, does not necessarily arise here; but, as the question has been made and argued, we feel justified in saying that the first release, being not under seal, but a valuable consideration having been paid for the execution thereof, is a valid instrument, and that a seal thereto would not add to its validity. Where a consideration is expressed in a release, or admitted, or otherwise proved to have passed between the parties, a seal is entirely immaterial.

The consideration gives character to the instrument, and the technical effect of a seal is only important, as it relates to a question of evidence. A seal imports a consideration. It furnishes evidence of itself that a consideration passed between the parties; but, if a consideration can be otherwise proved, a seal is not necessary, except in those cases where a release is designed to effect the conveyance or transfer of real estate, or some interest therein. A release, without a seal and without a consideration, is void; and the same rule applies as well to bonds, promissory notes, and all other instruments in writing, as to releases. And so a release with a consideration, but without a seal, is of binding force, subject to the foregoing limitation as to real estate, the distinction being that, where the consideration is not implied or expressed, it must be proved. 1 Pars. on Notes & Bills, 248; *Benjamin* v. *McConnell et al.*, 4 Gill. 545; 13 Johns. 87; 1 Cow. 122.

These releases, then, being valid instruments, we come to the consideration of the question as to the effect of the release of Field upon his co-joint debtors, Ervin and Metcalf. Does his release discharge his co-obligors?

It is contended by the plaintiff that these notes being several as well as joint obligations, the release of one of the makers does not discharge the others. In other words, that the plaintiff, the payee, can discharge either of the joint makers, and retain the liability against the others, because of the several characters of the obligation. We do not think that reason or the authorities support the proposi-

tion.  On the contrary, we hold that a release of one of two
or more joint and several debtors, is a release of all, and
this seems to be the language of the books since before the
time of Lord Coke.  The reason for the rule is obvious.
The debt is entire, and when once satisfied or released, can
no longer be enforced against any party to it.  One satisfac-
tion to an entire debt, duty or obligation, be it several as
well as joint, is all the law will enforce.  The several char-
acter of the obligation does not change the rule or the rea-
son thereof.  The doctrine contended for seems to be that in
a joint and several obligation the obligee can enforce pay-
ment as many times as there are obligors to the instrument.
There is no authority for such a proposition.  Where there
is one entire debt there can be but one discharge, one pay-
ment, and one satisfaction, and if one of the joint and sev-
eral debtors pays the debt and receives his discharge, such
discharge must necessarily release his co-debtors.

A reference to the authorities, we believe, will sustain the
foregoing propositions.

In Bacon's Abridgment, vol. 8, p. 276 (*g*), it is laid down
that if two or more are jointly and severally bound in a
bond, a release to one discharges the others; and, in such
case, the joint remedy being gone, the several is so likewise.

In Story on Promissory Notes, section 425, the same prin-
ciple is enunciated as follows :  A release of one joint
maker or indorser by the holder, whether they are accom-
modation parties or not, will discharge all the parties, for
such a release is a complete bar to any joint suit, and no
separate suit can be maintained in such a case.  In short,
when the debt is extinguished as to one it discharges all,
whether the parties intended it or not.  The like rule ap-
plies to cases where a satisfaction has been made by any
one joint maker or indorser, or by any one partner in two
firms where each firm is bound upon the note.  See Chitty
on Bills, ch. 9, 449, 450 ; Bayley on Bills, ch. 9, 342, 344 ; 1
Story's Eq. Jur., § 112 ; Byles on Bills, 232.

So in the case of *Tuckerman et al.* v. *Newhall*, 17 Mass.
580, the same doctrine is fully maintained.

This was an action of assumpsit on a joint and several promissory note, signed by Joel and Isaac Newhall as principal, and by Cheever Newhall as surety. The defendants pleaded the general issue, which was joined, and a special plea in bar, wherein it was alleged that after making the note an indenture of three parts was entered into by said Joel and Isaac Newhall, who were copartners in trade, of the one part, three persons as trustees, of the second part, and divers of the creditors of the said J. & I. Newhall, among whom was the plaintiff, of the third part, in and by which indenture the plaintiffs, for the considerations therein mentioned, released the said J. & I. Newhall from all claims and demands which they had against them.

Upon the questions made by this plea in bar, the court say: As to the first point made by plaintiffs' counsel, that admitting the indenture to operate as a release to J. & I. Newhall, yet it will not have that effect on the defendant, because his promise is several as well as joint. This has already been answered.

The authorities are perfectly clear that a release to one joint and several obligor discharges both.

And so in the case of *Wiggin* v. *Tudor*, 23 Pick. 444, the court say: The rule of law is, that a release of one of two joint and several debtors is, in legal operation, a discharge of both, because the debt is entire; and, when once satisfied, can no longer be enforced.

In the case of *Benjamin* v. *McConnell and others*, 4 Gill. (Ill.) 536, the court say: A release of one of two or more joint, or joint and several obligors or promisors, is a release of all; and this doctrine is affirmed in the case of *Rice* v. *Webster et al.*, 18 Ill. 331.

It seems useless to multiply authorities, upon a proposition so well settled, and we have no hesitation in saying, that the release of Field, for a valuable consideration, from all liability upon the notes and mortgages mentioned and set out herein, is also a release of Ervin and Metcalf. There can be but one discharge, but one satisfaction of the debt, and if Field discharged the debt, then there is no claim against Ervin and

·Metcalf. It is not possible to discharge one of two joint and several obligors, and retain a legal obligation against the others. And this leads us to the consideration of the proviso in the release, wherein it is specified that the release of Field shall not affect the liability of Ervin and Metcalf.

Recurring again to Bacon's Abridgment, vol. 8, p. 277 (*g*), we find this language : " If two are bound in an obligation, and the obligee releases to one of them, proviso that the other shall not take advantage of it, the proviso is void."

In the case of *Benjamin* v. *McConnell et al.*, the appellees sued the appellant, upon a note payable on demand, for $204.44, payable to Murray McConnell and Holloway Van Syckel, and signed by C. Benjamin & Co. The appellant pleaded payment ; second, that appellant and Delehay made the note as partners ; that on the 27th day of March, 1844, appellees made an agreement in writing with Delehay, and filed the same of record in the Scott circuit court, in a chancery suit then pending in that court, between *McConnell, Van Syckel and James A. McDougall*, complainants, v. *Mark W. Delehay*, defendant, by which agreement Delehay was discharged from the payment of the note, and the same as against him was released and canceled ; that, by this agreement, it was expressly provided that the same should not operate to release Benjamin, nor to be considered as canceled as to him, and that this agreement was made upon a compromise and settlement of the chancery suit. It will be seen that the proviso to this release was the same in effect as the one in the case under consideration. As to the effect to be given to this proviso, the court say : That a proviso in a contract, totally repugnant to the contract itself, is void. Delehay has been wholly released from the payment of the note ; on his part there is no longer any liability. Benjamin cannot be sued alone. If an action be brought against them jointly, Delehay can interpose no plea founded on this agreement, personal to himself. The release, when set up, is an effectual bar to the cause of action, and destroys the right to maintain the suit. The contract is entire, whatever discharges one releases the other.

In the case of *Rice* v. *Webster et al.*, the court having under consideration a release containing a proviso similar to that in the case last cited, and of the same legal import as the proviso in the case at bar, say : Here is manifestly an attempt to discharge absolutely one of the parties, and to retain the legal obligation against the other. This the law will allow no ingenuity of language to effect. The paper is a nullity or it must be made effectual. It is either a release of both, or it is of no benefit to either. It is founded upon a legal consideration moving from one of the parties which has the same legal effect as if it had moved from the other party or both parties jointly. It releases Willey forever from all process arising upon the joint demand, and then undertakes to impose the condition or to make the release depend upon the condition that Rice should not thereby be released. To give effect to this condition would be to destroy the release itself, even as to Willey. The condition is therefore repugnant to the previous covenant, and must destroy it, or be destroyed by it. When that is the case the rule of law is well settled that the condition must give way that the covenant may stand. See, also, *Owen* v. *Homan*, 20 L. J.; *Wiggins* v. *Tudor*, 23 Pick. 434 ; *Stearns* v. *Tappin*, 5 Duer, 294 ; *Hoosac* v. *Rogers*, 8 Paige, 229 ; *Joy* v. *Warz*, 2 Wash. C. C 266.

So we say in the case we are considering ; the release to Field is a nullity or it must be made effectual. Field paid more than $1,500 for this release, and the effect of this payment and the execution of the release is precisely the same as if this consideration had moved from Field, Ervin and Metcalf. It not only releases Field, but also Ervin and Metcalf, or Field is still liable for the full amount of the debt notwithstanding the payment of $1,500. The proviso is repugnant to the covenant, and must fall that it may stand. We, therefore, say that the legal effect of the release to Field was a payment and cancellation of the entire debt and judgment against Field, and also against Ervin and Metcalf, and the order of sale having been issued, and the sale made, upon a judgment that had been fully can-

celed and discharged, the same are utterly void and of no effect.

2. After the rendition of the judgment, and in the proceedings to sell the mortgaged premises, the plaintiff seems to have acted upon the supposition that the release to Field was a nullity, not only as to Ervin and Metcalf, but as to Field himself, and that the payment by Field to him of $1,528.30, was a pure donation; for, we find that the execution and order of sale was issued for the full amount of the judgment, no credit having been given on account of the payment by Field, and all the mining ground mentioned and described in the mortgage, including the one-half released to Field, was sold and bid in by plaintiff for the sum of $3,200, that being the amount of the judgment and costs, so that, as the case stands, the plaintiff has received $3,025.70, the amount of the judgment, and also $1,528.30, making the sum of $4,544 recovered upon a judgment of $3,025.70. Such a proceeding, in the absence of any explanation thereof, violates every principle of honesty and fair dealing; and to confirm this sale would be to rob one man that another might receive twice what belongs to him.

If the release was utterly void as to all the parties, the sale, under the circumstances disclosed in the record, would have to be set aside.

3. The remaining question relates to the computation of interest upon the notes herein set forth.

The first bears date July 19, 1869, and is payable on or before the 1st day of June, 1870, with interest at the rate of three per cent per month until paid.

The second note is of the same character, bearing date July 19, 1869, and payable on or before the 1st day of August, 1870, with interest at the rate of three per cent per month until paid.

Our statute provides (Bannack Stat. 535): "Creditors shall be allowed to collect and receive interest, when there is no agreement as to the rate thereof, at the rate of ten per cent per annum, for all moneys after they become due, upon any bond, promissory note," etc., etc.

Section 3 of the same act provides that: "The parties to any bond, bill, promissory note, or other instrument in writing, may stipulate therein the payment of a greater or higher rate of interest than ten per cent per annum, and any such stipulation contained in any such instrument of writing may be enforced in any court of law or equity, of competent jurisdiction, in this Territory."

Under this statute, we have already heard (*Davis* v. *Hendrie, ante,* 499), that it was competent for parties to contract for a higher or greater rate of interest than ten per cent per annum, after the maturity of the note, so that the only question now for us to determine is : Did the parties so contract in the notes upon which the decree in this case was founded ?

By the terms of the notes, was there any contract or agreement to pay interest at the rate of three per cent per month after the notes became due ? Do the words "with interest at the rate of three per cent per month until paid" import a contract to pay interest at that rate after the maturity of the notes ?

It will be seen by a computation of the interest upon the notes, that interest at the rate of three per cent per month was calculated and allowed in the decree from the date of the notes up to the date of the rendition of the decree, whereas the defendants contend that by the terms of the notes they only contracted to pay interest at that rate to the maturity of the notes.

The contract set out in these notes must be construed like any other contracts. If there is no ambiguity or uncertainty in the agreement, we must look to the words of the contract to arrive at the intention of the parties.

Let us examine this contract. Take for instance the first note. The makers promise to pay to the payee $400 on or before the 1st day of June, 1870, with interest at the rate of three per cent per month until paid. This agreement to pay interest must be construed with reference to the balance of the contract. The contract is to continue in force until the 1st day of June, 1870, at which time the note becomes

due and payable, and the agreement as to interest cannot be extended without express words to that effect beyond the time fixed for the payment of the principal. The payee promises that the makers may have the money until the 1st day of June, 1870, and no longer, and the makers promise that they will pay at that date. There is no intimation that this contract is to be extended beyond the date fixed by the parties, and the contract being reduced to writing would preclude any parol understanding of the kind. So, then, after the note has run its allotted time, at a given rate of interest, that is when the contract has expired by its own limitation, the relative rights of the parties, as fixed by the contract, ceases. They contract for a definite fixed period. The time expires, the money becomes due, and its payment can be enforced, and if not enforced, the amount of the note becomes so much money due, and the statute fixes the rate of interest.

The case of *McLane* v. *Abrams et al.*, 2 Nev. 199, is relied upon as opposed to the view herein expressed. The Nevada statute which controlled the case is as follows:

"Parties may agree in writing for the payment of any rate of interest whatever on money due or to become due on any contract. Any judgment rendered on such contract shall conform thereto and shall bear the interest agreed upon by the parties, and which shall be specified in the judgment."

This statute was held to continue the rate of interest as fixed in the note, after its maturity, and up to the time of the rendition of the judgment. The case depended for its decision entirely upon the wording of the Nevada statute, and in the absence of any such provision in our statute the case cannot be taken as authority here.

The doctrine that the words "until paid," must be construed with reference to the date of payment, is sustained in the decision of *Brewster* v. *Wakefield*, 22 How. 118. In that case it appears that Brewster, on the 11th day of July, 1854, executed his two promissory notes, whereby in one of them he promised to pay, twelve months after the date

thereof, to the order of Wakefield, the sum of $5,583.25, with interest thereon at the rate of twenty per cent per annum from the date thereof, for value received, and in the other promised to pay to the order of said Wakefield the further sum of $2,000, twelve months after date, with interest thereon at the rate of two per cent per month from the date.

In one of the notes it was an agreement to pay interest at such a rate per *annum*, and in the other at such a rate per *month*.

Chief Justice TANEY, in delivering the opinion of the court, says: "The contract being entirely silent as to interest if the notes should not be punctually paid, the creditor is entitled to interest after that time by operation of law and not by any provision of the contract. Nor is there any thing in the character of this contract that should induce the court by supposed intendment of the parties or doubtful inferences to extend the stipulation for interest beyond the time specified in the written contract."

That is to say, the intention of the parties shall be arrived at by the words they use to convey their meaning. And in the case at bar, we say the words, "until paid," when taken in connection with the balance of the contract wherein the date of payment is fixed, are controlled by this limitation, and they do not extend the contract beyond this date, any more than the words *per annum* or *per month* did in the case of *Brewster* v. *Wakefield*. These words in and of themselves do not make a contract, and when construed with the balance of the agreement are in perfect harmony with it and together make a complete contract. To hold that these words extend the contract the court must say that the parties, in the absence of any stipulation upon the subject, agreed for a valuable consideration that these notes should not be paid at their maturity, but that they should run for an indefinite period, at the pleasure of either party, and that the time of payment was wholly indefinite and uncertain. If the court should take upon itself to say this, it would simply make a contract for the parties, to which

the parties themselves would be utter strangers, which contract would be perfectly indefinite as to its duration and void for the want of a consideration.

There is nothing in the nature of the contract to induce a court by doubtful inferences to extend the stipulation as to interest, and we are certainly not called upon to manufacture a new contract for the parties, and then to give a construction to this child of our own imaginations.

We have held that parties may stipulate and agree as to the rate of interest after the maturity of the note, but the court cannot supply such an agreement, and if a greater rate of interest than ten per cent per annum is to be received after the note becomes due, it must be so written down in the bond.

Judgment reversed and cause remanded.

*Judgment reversed.*