GUICHARD vs. BRANDE.

*April 6 — May 31, 1883.*

DEBTOR AND CREDITOR. *(1) Novation. (2) Payment by forged securities. (3) Estoppel by admission of payment.*

1. Novation is the substitution of one debtor for another, or the substitution of a new obligation for an old one which is thereby extinguished; and where there is a novation by the substitution of a new contract for an old one, the new contract must be a valid one upon which the creditor can have his remedy.
2. Payment, to constitute a defense, must be of money or something accepted in its stead. A valid obligation cannot be paid or satisfied by the transfer of forged securities.
3. To create an estoppel by an admission of payment it must appear that the person setting up the estoppel was induced by such admission to do something to his prejudice if that admission should be withdrawn or contradicted.

APPEAL from the Circuit Court for *Milwaukee* County. Action to recover moneys collected by the defendant as attorney for the plaintiff. The answer alleges payment. The facts are stated in the opinion. The court directed the jury to return a verdict for the plaintiff, and from the judgment entered on such verdict the defendant appealed.

For the appellant the cause was submitted on the briefs of *Finches, Lynde & Miller.* On the question of estoppel they cited: *Continental Bank v. National Bank,* 50 N. Y., 575;

*Casco Bank v. Keene,* 53 Me., 103; *Blair v. Wait,* 69 N. Y., 114; *Racine Co. Bank v. Lathrop,* 12 Wis., 466.

For the respondent there was a brief signed by *J. V. Quarles,* as attorney, and *Quarles & Stebbins,* of counsel, and the cause was argued orally by *Mr. J. V. Quarles.*

COLE, C. J.   1. We do not see that the doctrine of novation has any just application to the facts of this case, even if that defense had been relied on in the answer, as it is not.   It is admitted that the defendant collected for the plaintiff $1,156.69 on what is called the Scott mortgage.   While this money was in the defendant's possession, the plaintiff saw Thiers, who had an office in the same room with defendant, and had formerly been—if he was not then—defendant's partner, and entered into an arrangement for exchanging this money and other securities for the Pennoyer note and mortgage. This arrangement was made in the absence of the defendant, perhaps without his knowledge at the time, but the money did not actually pass from his possession.   The business was transacted by the plaintiff and Thiers alone.   There is no fact or circumstance shown which will warrant the assumption that there was an intention to substitute Thiers as the debtor for the defendant, or that the plaintiff agreed to look to Thiers for the payment of the money.   This was not the nature of the transaction.   But the plaintiff did agree with Thiers to exchange the Ernst securities which he owned, and this money which was then in the defendant's safe, for the Pennoyer note and mortgage.

The arrangement entered into would, doubtless, have had the effect to release the defendant from his liability to account to the plaintiff for the money, had there been no fraud in the transaction.   But the Pennoyer note and mortgage were forged and worthless, so that the plaintiff received no consideration for the transfer of his Ernst securities and his claim on the defendant for the money.   And though Thiers

went through the form of applying that money on the purchase of worthless securities, still the debt or claim for it remained the same.   The defendant retained the money, and, unless he is released on some other ground, must account for it.   "Novation means simply the substitution of one debtor for another,"— LYON, J., in *Lynch v. Austin*, 51 Wis., 287,— or it is the substitution of a new obligation for an old one, which is thereby extinguished.   *Bronson v. Fitzhugh*, 1 Hill, 186.   We, therefore, cannot see that there was any novation in the case.   Would the transfer of the absolutely void and worthless Pennoyer note and mortgage have the effect in law to extinguish the plaintiff's valid obligation against the defendant?   If so, upon what principle?   Where there is a novation by the substitution of a new contract for an old one, the new contract must be a valid one upon which the creditor can have his remedy.   *Hosack v. Rogers*, 8 Paige, 238; *Clark v. Billings*, 59 Ind., 509.   For these reasons we think the doctrine of novation has no proper application to the facts of this case.

2. The only defense set up in the answer is payment.   That defense is not seriously relied on; certainly it was not sustained by any evidence given on the trial.   The matters to show payment would, doubtless, be — if such a defense were seriously urged — the transfer by Thiers to the plaintiff of the forged securities to which we have referred.   But it surely requires no argument to sustain the position that a valid obligation cannot be paid or satisfied by transferring forged securities, any more than it could be by being paid in counterfeit coin or the bills of a broken bank.   When payment is relied on as a defense, the defendant must prove the payment of money, or something accepted in its stead.   If Thiers had transferred valid securities, the transaction would be regarded in law as equivalent to actual payment.   But while this defense is really the only one set up in the answer, it is not pressed, therefore need not further be considered.

Guichard vs. Brande.

3. The real defense relied on to defeat a recovery is an estoppel. It is insisted that upon the facts disclosed the plaintiff is estopped from asserting or claiming that the defendant owes him the Scott collection. It is true, no estoppel was set up in the answer, but all the evidence tending to establish that defense was admitted without objection. It is, therefore, too late to insist now that such evidence was not admissible under the answer. *Mowry v. Mosher*, 16 Wis., 48. The facts which give rise to the alleged estoppel are in the main these: A few days after the transaction between the plaintiff and Thiers, above mentioned, the defendant saw these parties together in the street, when he asked the plaintiff if Thiers had paid him the money which he, the defendant, had collected on the Scott mortgage. The plaintiff answered that he had. The defendant then said, in the presence of both parties, that he would go and charge it up on the firm books; that is, he would credit it to Thiers and would charge himself with it in the account. And the defendant says in his testimony that on the strength of this statement or admission of the plaintiff that Thiers had paid him this money, he did in fact charge himself with it upon the books of Brande & Thiers, and credit Thiers with that amount, and that these entries so stood up to the time of trial. The entries were made some time in April or May, 1881, and in October following the plaintiff found out that the Pennoyer securities which he had taken from Thiers were forgeries. The plaintiff then saw Thiers, who agreed to make the matter right with him. Thereupon the plaintiff delivered up to Thiers the forged securities, and Thiers assigned back to him the Ernst securities, and said he would try and raise the money to satisfy the plaintiff the day of this interview or the next. But the next day Thiers ran away, was subsequently arrested, and convicted of the crime of forgery. The plaintiff in his testimony states that for three or four months he had had suspicions that something

was wrong about Thiers, but these suspicions he did not communicate to the defendant, and he surrendered up to Thiers the forged paper without the knowledge or consent of the defendant.

Now, the inquiry is, What is there in all these facts which shows that the plaintiff is estopped from claiming of the defendant the money collected on the Scott mortgage? The learned counsel for the defendant says the plaintiff stated or admitted to his client, when asked the question in the spring, that Thiers had paid him that money. The plaintiff then undoubtedly supposed he had been paid through the purchase of the Pennoyer securities. He was then ignorant of the forgery which rendered those securities worthless, and was mistaken in supposing them valid. Still, if the defendant, relying on this admission or statement of the plaintiff that the money had been paid, had acted upon it to his injury, the plaintiff might be estopped from saying it was not paid. But he did not. All the defendant did do was to credit Thiers upon the firm books with this money and charge himself with it. This was the only change in his position in regard to the money. It does not appear that he ever delivered the money to Thiers, or surrendered any security which he held against Thiers on the faith of this admission of payment, or that he can or will be prejudiced in any manner by the entry made upon the firm books. Upon the evidence as it now stands we are authorized in saying that the defendant has simply given Thiers a credit upon the books of the firm to which he was not entitled. That is all that is shown. Now, it is essential, to create an estoppel, to show that the defendant was induced by the admission of payment to do something to his prejudice if that admission should be withdrawn or contradicted. And the defendant was bound to affirmatively show that he was injured by making the credit on the books, or the estoppel is not made out.

Guichard vs. Brande.

The learned circuit judge so ruled on the trial, and we fully agree with him in that view of the law. It is not claimed that the defendant parted with any money or valuable thing in consequence of the admission made or of the credit given. If the plaintiff recovers his money in this action he will only recover what has always been in the possession of the defendant. The law of equitable estoppel is familiar, and is said to rest on principles of natural justice and equity. Where a person does or says something to influence the conduct of another, and that other person acts upon the faith of such act or representation, the former is precluded from denying its truth to the injury of the latter. And had it appeared that the defendant, in consequence of the admission of payment by the plaintiff, had acted upon that admission and had delivered over the money to Thiers, or had parted with something valuable on the strength of it, a very different case would be presented. We assume as a fact proven that Thiers was indebted to the defendant and to the firm also when this credit was given him on the books, but still that fact does not change or affect our conclusion as to the rule of law applicable to the case. The radical defect in the defense is, it was not shown that the defendant will be injured by permitting the plaintiff to disprove payment and recover the money, which has never gone from his possession. The cases to which we were referred upon this question by defendant's counsel, go to the point that where a party parts with money, relying upon a representation made, or is induced to refrain from obtaining security because of it, and is injured, an estoppel arises. Substantially the same doctrine has often been affirmed by this court. But it is said the plaintiff had no right to negotiate with Thiers for a return of his securities, without the knowledge or consent of the defendant. We are unable to perceive any legal objection to his doing so. It surely does not appear that the defendant was placed in a worse position in consequence of that

transaction.   It would seem as if the plaintiff had the right to recover his property from one who had obtained it through an outrageous fraud, if he could.

Again, it is said that plaintiff should have disclosed to the defendant his suspicions as to the integrity and honesty of Thiers.   We do not think the plaintiff, under the circumstances, was under any obligation to communicate these suspicions to the defendant.   It does not appear what ground he had for entertaining them; he certainly did not know that they were well founded.   Besides, he might reasonably have supposed that the defendant, who had an office in the same room and was intimately connected in business matters with Thiers, would be as likely to find out whether he was dishonest or not as himself.   And it is certainly strange, considering the series of forgeries and swindling transactions carried on by Thiers for a long time, that the defendant's suspicions were not aroused; but it seems they were not.

After the evidence was all in, it was stipulated and agreed by counsel in open court that there was no question of fact to go to the jury, and that the court should pass upon the questions of law and direct a verdict as the legal questions should be determined.   The counsel for the defendant asked the court to give several instructions to the jury, which, in view of the stipulation, would not seem to have any office in the case.   The facts being undisputed, the court could direct a verdict according to his view of the law.   But the same counsel took exceptions to the refusal of the court to give his instructions.   We shall not consider these exceptions in detail; we think they are inconsistent with the views which we have expressed, and were, therefore, properly refused.

*By the Court.*— The judgment of the circuit court is affirmed.