HUSTED *v.* POGUE.

1. ESCROWS—RECEIVERS—FUNDS PLACED IN ESCROW NOT DELIVERABLE WHERE CONDITIONS NEVER MET.

A fund placed in escrow by members of a banking partnership to establish bank's solvency and facilitate its sale never became assets of bank or purchaser where sale was never consummated and conditions under which it was to be delivered to purchaser were never met, and therefore receiver appointed on application of depositors was not entitled to said fund.

2. NOVATION—DEFINED—WORDS AND PHRASES.

"Novation" means the substitution of one debtor for another, or the substitution of a new obligation for an old one, which is thereby extinguished.

3. SAME—MAY BE SET ASIDE FOR FRAUD.

Novation is based on contract, and may be set aside for fraud.

4. SAME—INDUCED BY FRAUD SET ASIDE—GOOD FAITH.

Depositors in partnership bank, who were induced to surrender old deposit books and accept new ones issued by purchaser of bank through partner's false statements as to purchaser's financial ability, were entitled to have novation thus created set aside for fraud, although said statements were made in good faith.

5. BANKS AND BANKING—OWNERS OF BANK WHO WERE DEPOSITORS ENTITLED TO SHARE IN ASSETS.

Members of partnership owning bank, who were depositors therein when it went into receiver's hands, are entitled to same right to participate in distribution of bank's assets as are other depositors.

6. SAME—OWNERS WHO ARE ASSIGNEES OF DEPOSITORS' CLAIMS ENTITLED TO SHARE IN ASSETS.

Members of banking partnership who settled with depositors and took assignment of their several claims against the bank after it became insolvent are entitled to participate in distribution of assets in accordance with amount of claims of such depositors.

7. SAME—ONE NOT MEMBER OF BANKING PARTNERSHIP NOT LIABLE
   TO DEPOSITORS.
      One not shown to have been member of banking partnership
      and disclaiming any interest therein is not personally liable.
      to depositors on bank's becoming insolvent.

Appeal from Lapeer; Boomhower (Xenophon A.),
J. Submitted October 25, 1929. (Docket No. 125,
Calendar No. 34,025.) Decided January 24, 1930.

Bill by Percy Husted and others against Robert
Pogue and others, doing business as Lum Exchange
Bank, for appointment of receiver and winding up
of affairs of the bank. Fred McLaughlin and others
intervened as plaintiffs. From a decree for plain-
tiffs, defendants appeal. Modified and affirmed.

*Geo. W. DesJardins,* for certain intervening plain-
tiffs.

*Theo. D. Halpin,* for defendants.

POTTER, J. July 23, 1924, plaintiffs filed a bill of
complaint against defendants Robert Pogue, Mary
Pogue, Priscilla Reid, Porter Lamphere, William
Dixon, and Margaret Dixon, doing business as Lum
Exchange Bank, Delos Conley, personally, and Ber-
nard S. Fineman, doing business as Lum Exchange
Bank, asking for a receiver for Fineman, doing busi-
ness as the Lum Exchange Bank, and of all of the
assets of the bank; to wind up the affairs of the
bank and distribute its assets, direct a reconveyance
to the bank or to the receiver of certain real estate
claimed to have been purchased by Fineman with
the assets of the bank; to restrain Fineman from
selling or disposing of any of his property or of the
bank's property pending suit; to restrain Conley
from assigning or otherwise disposing of certain

notes, checks, papers, and bonds held by him in accordance with the contract hereinafter set up, except to the receiver, and to set aside, on the ground of fraud, the transfer of liability to the plaintiffs from the partnership to Fineman and to recover personal decrees in the nature of money judgments against the defendants, other than Conley, for the amount due plaintiffs and the other depositors less the amount distributed by the receiver, and for other relief.

A receiver was appointed August 13, 1924, with the usual powers and duties of a receiver, and defendants were ordered to transfer to him all of the bank's assets, and the receiver was authorized to receive and dispose of the same.

The case was tried, and April 8, 1926, an opinion was filed. On August 4, 1926, an interlocutory decree was entered appointing a receiver not only of the assets of defendant Fineman but of the partnership doing business as the Lum Exchange Bank, directing the receiver to collect from defendant Conley the $25,000 in par value of bonds that he held, and that he deliver all other assets in his hands belonging to the partnership, including the notes, checks, and deeds to the amount of $4,000 held by him to the receiver; that defendants, constituting the partnership, and Margaret Dixon, convey the real estate and banking building and the vacant lot described in the decree, to the receiver, assign all of the real estate mortgages, notes, and other collateral due to the Lum Exchange Bank to such receiver, and decreeing that the title thereto should be vested in such receiver, and enjoining Fineman and Conley as prayed for in the bill of complaint, and providing that the receiver sell and dispose of all personal property and real estate in his possession, the pro-

ceeds to be held for pro rata distribution among all the depositors except partners of the Lum Exchange Bank as conducted by said partnership and by Fineman; all moneys which would have gone to the depositors with whom the partners have settled since suit commenced to be held by the receiver as a separate fund, and all depositors who had not released their claims against the partners by novation or otherwise, might, within 60 days intervene in this suit and prosecute their claims at their own expense, except as allowed by the court against the partnership, and such of them as might establish their claims against the partnership be entitled upon final decree to be paid from such special fund such amount as they might be entitled to over and above the amounts coming to them on a pro rata distribution of the general fund; any portion of the special fund remaining after the payment of such depositors proving their claims, to go to partners; that proofs might be taken before the court to ascertain the status of any depositor's claim, and that plaintiffs and all other depositors have decree against Fineman for any amounts due after crediting payments made by the receiver.

In accordance with the provisions of this interlocutory decree, various depositors of the bank filed intervening petitions, and, after a hearing thereon, a final decree was entered August 25, 1927, following substantially the form of the interlocutory decree above referred to, directing the pro rata distribution of the assets of the bank, less expenses, to the depositors, and giving a decree to certain intervening plaintiffs against the defendants except Conley, for any amount due after payment as provided in the interlocutory decree; the amount of said money

decree to be ascertained and entered upon application to the court after distribution.

From the final decree entered, defendants Robert Pogue, Priscilla Reid, Porter Lamphere, William Dixon, and Margaret Dixon doing business as Lum Exchange Bank, and Delos Conley appealed.

The Lum Exchange Bank was an old institution. It was acquired by defendant copartners several years before its transfer to Fineman. The partners had drawn no salaries. The bank had paid no dividends. It had suffered losses and owed, when taken over by Fineman about $6,500 more than it had assets to cover. Some of the partners were getting along in years and wanted to sell out and retire from business. Fineman was engaged in the building business in Detroit. He had been through bankruptcy but a few years before he became interested in acquiring the Lum Exchange Bank. Some investigation was made of his responsibility, and the partners were led to believe he was of sound financial standing. They agreed to sell the bank to him. Examination of the financial condition of the bank showed it was insolvent. The partners were familiar with their liability to their depositors, and were anxious to be protected from personal loss. To facilitate the sale of the property and business, it was agreed that the members of the partnership should put up $4,000 toward making the bank solvent. Fineman was to have possession of the bank upon putting up $25,000 in par amount of real estate bonds, and to assume liability to all depositors.

A written contract was made and entered into by the partners, as follows:

"Agreement made this 23d day of May, 1924, between Robert Pogue, Mary Pogue, Porter Lamphere, William Dixon, and Priscilla Reid, copartners doing

business as the Lum Exchange Bank, of Lum, Michigan, hereinafter called the vendors, and Bernard S. Fineman, of Detroit, Michigan, hereinafter called the purchaser.

"Whereas, the vendors have conducted a private banking business at Lum, Michigan, for several years, and are now desirous of retiring from said business, and the said purchaser is desirous of establishing a banking business at Lum, now, therefore, vendors agree to sell, and purchaser agrees to purchase, the property and assets of said Lum Exchange Bank, hereinafter mentioned and described upon the terms and conditions hereinafter stated.

"It is understood and agreed that the property and assets of said Lum Exchange Bank which vendors herein agree to sell to purchaser includes the following items: Banking house now occupied by said Lum Exchange Bank at Lum, Michigan, with land appurtenant thereto; bank furniture and fixtures in said building and used in the business of said bank; vacant lot owned by said vendors, situated on northeast corner of four corners west of building known as Masonic Hall, in Lum, Michigan; notes and bills receivable, $24,064.71; accrued interest on said notes and bills, $1,633.94; items in transit, $1,223.80; cash, $4,000; mortgages, $3,663.94. It is understood that the amounts above given of bills receivable, accrued interest, items in transit and mortgages, are as of date May 7, 1924, as shown by the books of said bank, and according to statement furnished to purchaser by vendors.

"The said vendors, in consideration of the agreement herein specified to be performed by purchaser, agree to execute and deliver good and sufficient deed of conveyance of the real estate above mentioned, and to execute and deliver bill of sale of the furniture and fixtures of said bank to said purchaser, also to transfer, assign and endorse to said purchaser the mortgages, and bills receivable hereinbefore mentioned as assets of said Lum Exchange Bank.

"It is also mutually agreed by the parties hereto that said deed, bill of sale, mortgages and assignments thereof, and bills receivable, upon transfer thereof, shall be turned over to A. D. Conley, of Imlay City, Michigan, to be held by him in escrow, until the performance of the agreement herein contained to be performed by said purchaser, shall be completed to the satisfaction of the said A. D. Conley and Elmer Shumar, of Imlay City, Michigan.

"It is also agreed on the part of said purchaser, that he will turn over to said A. D. Conley first mortgage bonds in the amount of $25,000 to be held by said Conley until completion of agreement by said purchaser as above stipulated.

"It is further agreed by the parties hereto that the liabilities of said Lum Exchange Bank, as shown by the books of said bank as of date May 7, 1924, and in statement furnished purchaser by vendors, consist of the following items: Commercial account, $20,683.07; certificate of deposit, $1,671.50; savings accounts, $39,310.34.

"The said purchaser, in consideration of the transfer to him of the assets of said Lum Exchange Bank, and the performance of the agreement herein contained to be performed by said vendors, agrees to assume the liabilities of said Lum Exchange Bank as hereinbefore mentioned, and agrees to pay to the depositors named in said accounts and certificates the amounts standing to their credit, and to secure from said depositors a release of said vendors from all liability on said accounts and certificates.

"It is agreed that the sale herein provided for shall include the good will of the banking business at Lum, Michigan, and that said purchaser shall have immediate possession of said banking house and fixtures, upon execution of said agreement, and also immediate possession of all other assets of said Lum Exchange Bank hereinbefore mentioned, except those held in escrow as hereinbefore provided.

"In witness whereof, the parties hereto have set their hands to this agreement the day and year first above mentioned.

"ROBERT POGUE,
"MARY POGUE,
"PORTER LAMPHERE,
"WM. DIXON,
"PRISCILLA REID,
"BERNARD S. FINEMAN."

In pursuance of this contract, Mr. and Mrs. Pogue, Porter Lamphere, Priscilla Reid and William Dixon were to put up $4,000 in all. This was done by giving promissory notes and checks on the bank, which notes and checks were delivered in escrow to defendant Conley, and, in pursuance of the contract, Fineman delivered to Conley $25,000 in par amount of real estate bonds, to be held in escrow pending the carrying out of the contract.

Fineman then went into possession of the bank, and began doing business, continuing in his employ the same cashier who had been employed by the partnership. Fineman continued to run the bank for some time. He made some improvements on the building, and acquired an interest in other real estate. The Lum Exchange Bank carried a substantial cash balance in its account in the National Bank of Commerce in Detroit. It rapidly found its way into Fineman's pockets, and the Lum Exchange Bank closed its doors. Many of the depositors, knowing the Lum Exchange Bank had been sold by the partnership, surrendered their old deposit books and accepted new ones in the Fineman bank. Other depositors of the bank were not asked to surrender their old books and did not do so. Several depositors in the partnership bank claimed to have been fraudulently induced to surrender their old deposit

books and to accept Fineman's credit by statements of his financial responsibility which proved to be false, and the assurance that the individual partners were back of Fineman.

1.   Should the $4,000 put up by the partnership to establish its solvency and deposited with Conley in escrow be delivered to the receiver? We think not. The deal providing for the sale of the bank by the partnership to Fineman was never consummated. Fineman never carried out his agreement. He did not relieve the partners from individual liability. The notes and checks deposited by the individual members of the partnership with Conley were deposited conditionally. The conditions on which they were deposited were never performed by Fineman. No delivery of such notes and checks to Fineman was warranted, and they never became assets of Fineman or of the partnership bank to which the creditors were primarily entitled to access.

2.   It is claimed, as to some of the interveners who surrendered their old books issued by the partnership and accepted new ones issued by Fineman, that the purported novation was procured by fraud, and they are not bound thereby.

"Novation" means simply the substitution of one debtor for another, or the substitution of a new obligation for an old one, which is thereby extinguished. It is based upon contract, which may be set aside for fraud. We think there was sufficient evidence to avoid a novation in the cases presented. There was evidence showing some of the depositors in the partnership bank were led by statements made by members of the partnership, on which they had a right to rely, as to Fineman's financial ability, which statements proved to be false, to surrender their old passbooks and to accept new ones in Fineman's bank. No doubt defendants were themselves misled

as to Fineman's wealth and responsibility, but this is no defense. The result to the interveners was the same whether defendants acted in good faith or in bad faith in making such statements.

Where novation is procured by fraud, it may be set aside.

*In re Tagliabue's Estate,* 206 N. Y. Supp. 222; *Guichard* v. *Brande,* 57 Wis. 534 (15 N. W. 764).

3.    Some of the partners in the bank were also depositors therein. This was particularly true of Lamphere, who, at the time of the transfer, had $3,527.84 on deposit, and defendant Reid, who had $1,346.41. It is not shown that either of these partners have ever made any statements to induce any of the depositors of the Lum Exchange Bank to transfer their accounts to Fineman's bank. That they were partners in the old bank does not prevent their being depositors therein, entitled to the same right to participate in the distribution of the assets of the bank as are other depositors.

4.    Some members of the partnership, after the bank was closed, settled with a number of depositors and took from each of such depositors an assignment of their several claims against the bank. As assignees of valid claims against the Lum Exchange Bank, they are entitled to participate in the distribution of its assets, in accordance with the amount of the claims of such depositors.

5.    The decree of the trial court directs that Conley surrender to the receiver the notes, checks, papers, and bonds deposited in escrow. We have already discussed and disposed of the $4,000 in commercial paper.

6.    The $25,000 in par amount of bonds are conceded to be worthless, and are therefore not further considered.

7. The decree gives the intervening plaintiffs a decree against the defendants, except Conley, for any amount due on their respective claims, after receipt of their pro rata share in the hands of the receiver. Defendant Margaret Dixon is not shown to have been a member of the partnership. She disclaims any interest therein. We are unable to ascertain upon what theory interveners are entitled to a personal decree in the nature of a judgment against her.

The decree of the trial court will be modified as above indicated, and, as so modified, will be affirmed, without costs.

WIEST, C. J., and BUTZEL, CLARK, SHARPE, FEAD, and NORTH, JJ., concurred. McDONALD, J., took no part in this decision.