80 B.R. 855 (1987)
In the Matter of Linda Lou CHURCHWELL, Debtor.
Richard C. REMES, Trustee, Plaintiff,
v.
FORD MOTOR CREDIT COMPANY, Defendant.
Bankruptcy No. GK 86-03650, Adv. No. 87-0073.
United States Bankruptcy Court, W.D. Michigan.
December 8, 1987.
Paul F. Davidoff, Stanley, Davidoff & Gray, P.C., Kalamazoo, Mich., for plaintiff.
Henry G. Swain, Law, Weathers & Richardson, Grand Rapids, Mich., for defendant, Ford Motor Co.
Richard Remes, Kalamazoo, Mich., Trustee.

OPINION REGARDING PERFECTION OF SECURITY INTEREST IN MOTOR VEHICLE
JAMES D. GREGG, Bankruptcy Judge.

FACTS
On February 9, 1987, Richard C. Remes, the Plaintiff and Chapter 7 court-appointed Trustee, hereinafter "Trustee", filed a Complaint against Defendant Ford Motor Credit Company, hereinafter "FMCC", seeking a determination that FMCC's security interest in a certain vehicle was not properly perfected. The Trustee seeks to therefore avoid FMCC's security interest in the vehicle pursuant to 11 U.S.C. § 544, the so-called "strong-arm" clause of the Bankruptcy Code. The parties have agreed that this court has jurisdiction over the dispute and that the adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. The parties have stipulated as to the relevant facts and no disputed facts exist.
On or about October 28, 1985, Linda Lou Churchwell, hereinafter "Debtor", and her husband, Eddie R. Churchwell, purchased a 1982 four-door Lincoln automobile, Vehicle Identification No. 1LNBP94F6CY668331, hereinafter the "vehicle", from Harold Zeigler Lincoln-Mercury, Inc., of Kalamazoo, Michigan. To finance the purchase of the vehicle, the Debtor and her husband granted the dealer a purchase money security interest in the vehicle. Shortly thereafter, the dealer assigned its security interest to FMCC.
Contemporaneously with the sale, an Application for Michigan Title, pursuant to an RD-108 form, was executed by the Debtor and her husband and submitted to the Michigan Secretary of State. The application stated that FMCC held a first secured interest in the vehicle. On October 30, 1985, a Vehicle Certificate of Title was issued by the Michigan Secretary of State, which showed the owners to be "Eddie Churchwell & Linda Churchwell". The "yes" box was checked under the heading of "Full Rights to Survivor" thereby indicating joint *856 ownership of the vehicle. On this first title, FMCC was designated as the first secured party.
After the issuance of the first Vehicle Certificate of Title and some time prior to June 9, 1986, the Debtor and her husband determined that the husband's name should be removed from the title to transfer the husband's ownership interest in the vehicle to the Debtor. The transfer of the husband's interest to the Debtor was apparently necessary because of a property division resulting from a marital separation or divorce. On June 9, 1986, FMCC issued a letter which stated:
To whom it may concern:
Please use this letter as our authority to add the name of Linda Churchwell and/or remove the name of Eddie B. Churchwell on a 1982 Lincoln, Serial No. 1LNBP94F6CY668331. Our ORIGINAL LIEN will remain in force.
Very truly yours,
FORD MOTOR CREDIT COMPANY
G. Farrell
Collection Department
This letter was notarized and given by a FMCC representative to the Debtor for presentation to the Michigan Secretary of State.
Some time between June 9, 1986 and June 13, 1986, the Debtor apparently presented the FMCC letter to the Michigan Secretary of State to procure the issuance of a new Certificate of Title which designated the Debtor as the sole owner of the vehicle. On the application for a new title, pursuant to a TR-111 form, in the section relating to tax-exempt transactions, the instructions were to "DROP LIEN HUSBANDS NAME". The owner's name was listed as the Debtor and the first secured party was listed as "NONE". Under the heading "Full Rights to Survivor", the letter "N" was shown. The TR-111 application was executed only by the Debtor.
On the reverse side of the original title, which was surrendered to the Michigan Secretary of State apparently at the time of the submission of the TR-111 application, the purchaser was listed as the Debtor and the seller's signature was "Eddie Churchwell, Linda Churchwell, Drop husband". Other than giving the authorization letter to the Debtor, no representative of FMCC was involved in the preparation or submission of the TR-111 application to the Secretary of State.
On June 16, 1986, the new Vehicle Certificate of Title was issued by the Secretary of State. This new title designated the owner as the Debtor and listed no secured party. On December 31, 1986, the Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code.

ISSUE
Does FMCC, as of the filing date of the Debtor's bankruptcy petition, hold a perfected security interest in the vehicle?

DISCUSSION
In accordance with a Retail Installment Contract, the Debtor and Eddie Churchwell granted the dealer a security interest in the vehicle at the time of the original sale transaction on or about October 28, 1985.[1] Pursuant to M.C.L.A. § 440.9203 and the assignment to FMCC by the dealer of its rights, FMCC has a valid security interest in the vehicle.
M.C.L.A. § 440.9302, with certain exceptions, generally requires that a financing statement must be filed to perfect a security interest. One of the exceptions relates to the instance when a security interest in a titled vehicle is perfected. M.C.L.A. § 440.9302(3)(b) states that the filing of a financing statement is not necessary or effective to perfect security interests in vehicles subject to the Michigan Vehicle Code, as amended, M.C.L.A. §§ 257.1-257.1626. Further, M.C.L.A. § 440.9302(4) mandates that compliance with the Michigan Vehicle Code is equivalent to the filing of a financing statement. Therefore, in Michigan, the perfection of a security interest in a motor vehicle is governed by the Vehicle Code and the rights of parties arising *857 from a perfected or unperfected status are governed by Article 9 of the Uniform Commercial Code as adopted in Michigan, M.C.L.A. §§ 440.9101-440.9507.
When the original sales transaction took place, the owner and the secured party complied with the provisions of M.C.L.A. § 257.238.[2] To create a security interest in the vehicle, the owners executed the RD-108 form to state FMCC's name and address as the secured party. FMCC, or its dealer-assignor, caused the title, the RD-108 application, a copy of the application, and the required fee to be mailed or delivered to the Michigan Secretary of State. Upon receipt of the documents and the requisite fee, the Secretary of State indicated the date and place of filing of the application and returned a copy of the application to FMCC. The Secretary of State also issued a Vehicle Certificate of Title listing the name and address of FMCC as first secured party and mailed the title to the Debtor and her husband, as owners. Therefore, in accordance with M.C.L.A. § 440.9302(4), FMCC held a perfected security interest in the vehicle.
Some time before June 9, 1986, the Debtor and her husband desired that the ownership of the vehicle be transferred from their joint ownership to sole ownership by the Debtor. FMCC, by one of its representatives, knew of the requested change in ownership and consented thereto as shown by the June 9, 1986 letter set forth above.[3]
M.C.L.A. § 257.234 governs instances when ownership of or an interest in a registered vehicle is transferred.[4] Pursuant to the stipulated facts and documents, it is clear that a transfer of the joint ownership by the Debtor and Eddie Churchwell to the sole ownership by the Debtor was contemplated by all parties. Therefore, in accordance *858 with M.C.L.A. § 257.234(d) the parties must comply with the provisions of M.C.L.A. § 257.238 regardless of whether a security interest is being reserved or created. FMCC, by its explicit or implicit consent to the transfer and issuance of the "To whom it may concern" letter, became a party to the transfer and was thus subject to the provisions of M.C.L.A. § 257.238.[5] However, rather than FMCC causing the Debtor's executed TR-111 application, a copy of the application and the requisite fee to be mailed or delivered to the Michigan Secretary of State (which application would or could set forth the reservation of FMCC's security interest), FMCC relied upon the Debtor to accomplish its statutorily imposed duties. Somewhat unexpectedly, but not surprisingly, and for unknown reasons, the TR-111 application and the subsequently issued Vehicle Certificate of Title failed to designate FMCC as the first secured party.[6]
The case of In re Heuberger, No. NK 76-747 B4 (Bankr.W.D.Mich.1977), an unpublished opinion rendered by Judge Nims, involved somewhat analogous facts. In that case, the bankrupts purchased equity in a mobile home from an individual seller named Trammell. The mobile home was subject to a security interest of Mutual Home Federal Savings & Loan Association which was perfected by an Application for Title filed with the Secretary of State pursuant to the Michigan Vehicle Code. The security interest was further designated on a subsequently issued certificate of title. At the time of the sale, Trammell and the bankrupts met at Mutual Home's office and executed an assignment document prepared by Mutual Home. By the assignment, Trammell conveyed ownership of the mobile home to the bankrupts subject to Mutual Home's unpaid indebtedness and its security interest. On the same day, Mutual Home signed the termination statement on the back of the title, Trammell executed the title to transfer ownership to the bankrupts, and the bankrupts were instructed to take the title to the local Secretary of State's office for filing and to pay the sales tax. The bankrupts failed to do so.
In Heuberger, the court found the termination statement signed by Mutual Home was not intended and did not eliminate Mutual Home's security interest in the mobile home. The Court stated:
"A security interest in a vehicle for which a certificate of title is required to be issued under Michigan Law . . . can be perfected only by `filing with the Secretary of State of an application for a certificate of title containing a statement with regard to such security interest,' Act No. 27, P.A. 1976. Every owner of a vehicle, with certain exceptions not material here, is required to make an application for a Certificate of Title which application shall contain a statement of the names and addresses of the holders of any security interest in the vehicle. M.C.L. 257.217, M.S.A. Sec. 9.1917. A mobile home is such a vehicle. In re Radny, 12 U.C.C.Rep. 583 (W.D.Mich.1973).
Id. at 2-3.
The Court further stated:
In Michigan, there is some indication that the legislature intended the secured party to assume some responsibility for assuring the filing of the application for title. M.S.A. Sec. 9.1917, supra provides in sub paragraph (d) that when a financing institution [sic] requires the seller to record the lien on the title, it must furnish certain information and pay a service fee of not more than $10.00 or the seller shall be free from any obligation to record the lien. Also, where *859 the security interest is created and a title was previously issued to the debtor, the primary obligation to file is on the holder of the security interest. M.C.L. Sec. 257.238, M.S.A. Sec. 9.1938. To hold that it is not necessary to file the application of title to perfect when the statute clearly states to the contrary would seem to be a complete ignoring of the acts of legislature and be a case of judicial legislation.
Id. at 4.
In Heuberger, the Bankruptcy Court held Mutual Home failed to perfect its security interest thereby causing its unperfected security interest to be subordinate to the interest of the trustee in bankruptcy. Mutual Home subsequently appealed the Bankruptcy Court's decision to the United States District Court for the Western District of Michigan. In Scanlan v. Mutual Home Savings & Loan Assn., No. K77-213 CA4 (W.D.Mich.1981), in an unpublished opinion by Judge Gibson affirming Heuberger, the court stated:
Mutual Home argues that the burden for obtaining a new certificate was upon the Heubergers and that failure to do so should result in continued perfection of the security interest granted to it by Trammell. This Court disagrees. Although M.C.L.A. 257.238 requires the new owner to execute an application for a new certificate showing the name of the secured party, that section further provides that:
(2) the holder of the security interest shall cause the certificate of title, application and fee and the copy of such application to be mailed or delivered to the department (emphasis supplied.)
Such a command is perfectly consistent with the concept of placing the burden on the secured party to protect his lien. Mutual Home must be deemed to have borne the risk that its Debtor would fail to obtain a new certificate when it could easily have protected itself against such an occurrence. Having failed to perfect its security interest, Mutual Home's lien is subordinated to the interests of the bankruptcy trustee. M.C.L.A. 440.9301.
Id. at 2.
The case of In re Park (Baehler v. General Motors Acceptance Corp.), 22 U.C.C. Rep.Serv. 1074 (Bankr.W.D.Mich., 1977) also considered somewhat similar facts and legal issues. In that case, GMAC originally held a perfected security interest in a van. After the debtor had completed some remodeling and changed the van into a motor home, the debtor obtained a new title which failed to disclose GMAC's interest as the first secured party. The new title was issued as a result of an error and not through fraud. Although a GMAC representative knew of the issuance of the new title, no action was taken to correct the title and disclose the existence of GMAC's security interest. The court held that GMAC failed to act in good faith as a result of its inaction to correct the erroneous new title. The Court stated GMAC should not have assigned the responsibility of correcting the error to a debtor when GMAC was in the business of financing vehicles and had experience in "the purpose, necessity and manner of perfection." In re Park, 22 U.C.C.Rep.Serv. 1074, 1980. Therefore, GMAC's security interest was deemed to be unperfected and subordinate to the interest of the trustee in bankruptcy.
Other cases have recognized that a secured creditor has a duty to perfect its security interest. In the case of In re Trim-Lean Meat Products, Inc., 10 B.R. 333, 335 (D.Del.1981), the court held the secured creditor must take reasonable steps to perfect its security interest in a motor vehicle. Absent a significant effort to perfect its security interest, fraudulent intent by the debtor, or an uncooperative debtor, the secured party bears the risk of unperfected status when its security interest is not properly registered as a matter of public record. Cf. In re Flynn, 6 U.C.C. Rep.Serv. 1119, 1121 (E.D.Mich.1969) ("The duty to file as required by the Code is imposed upon the secured creditor.")
Two recent decisions by the Sixth Circuit Court of Appeals have discussed vehicle certificates of title pertaining to debtorcreditor *860 relationships. The Sixth Circuit has recognized the importance of and reliance by creditors upon vehicle certificates of title. "[A] potential creditor need look only to one placethe certificate of titleto discover prior security interests. If the debtor cannot or will not produce the title certificate the potential creditor is immediately on notice that he acts at his own risk." In re Paige, 679 F.2d 601, 603, 33 U.C.C.Rep.Serv. 1218, 1222 (6th Cir.1982). Accord, In re Angier, 684 F.2d 397, 399, 34 U.C.C.Rep.Serv. 265, 268 (6th Cir.1982). Likewise, because millions of persons rely upon vehicle certificates of title to buy used motor vehicles, this Court also recognizes the paramount importance of certificates of title to transfer motor vehicles. If a "clean" title is produced by the seller, must the buyer make further inquiry, e.g., by obtaining a vehicle title history, to assure that good title will be received? This Court thinks not. Absent a buyer's knowledge of facts indicating fraudulent conduct or intent on the part of the seller, to require a buyer to make inquiry beyond the face of a certificate of title would be unduly burdensome and potentially muddle otherwise straightforward transfers of vehicles.[7]
In this case, FMCC relied upon the Debtor to effectuate the transfer of the joint ownership interest of the vehicle to the Debtor in her sole name subject to its security interest. FMCC provided a letter to the Debtor to accomplish this end.[8] FMCC did not, although it could have done so, prepare a new application for title and mail or deliver the application to the Michigan Secretary of State to assure FMCC would remain Michigan Secretary of State to assure FMCC would remain designated as a first secured party. FMCC further apparently failed to ascertain if the Debtor consummated the transfer in such a manner as to retain FMCC's designation as a secured party on the new application for title and the subsequently issued Vehicle Certificate of Title. FMCC therefore ignored its duty to comply with M.C.L.A. § 257.234 and § 257.238. No facts have been asserted or have been shown to exist that the Debtor has defrauded FMCC thereby giving rise to a possible right to equitable relief.[9]
Because FMCC has failed to comply with the statute to preserve its perfection by filing an application for title which noted its secured status, its previously perfected security interest in the vehicle was terminated upon the filing of the new application and the subsequent issuance of a "clean" title. Therefore, FMCC's unperfected security interest in the vehicle is subordinate to the Trustee's lien creditor status under 11 U.S.C. § 544(a). Further, the Trustee's interest in the vehicle is automatically preserved *861 for the benefit of the estate in accordance with 11 U.S.C. § 551. An order shall be entered accordingly.
NOTES
[1] At oral argument, counsel for the parties stipulated as to the existence and authenticity of the Retail Installment Contract which was attached to FMCC's proof of claim filed in this case.
[2] M.C.L.A. § 257.238(a) states:

Certificate of title. When an owner named in a certificate of title creates a security interest in the vehicle described in such certificate or in any accessory thereon:
(1) The owner shall immediately execute an application in the form prescribed by the department to name the holder of the security interest on the certificate of title, showing the name and address of such holder and deliver the certificate of title, application and the required fee together with a copy of such application which need not be signed, to the holder of the security interest.
(2) The holder of the security interest shall cause the certificate of title, application and fee and the copy of such application to be mailed or delivered to the department.
(3) The department shall indicate on the copy of such application the date and place of filing of the application and return said copy to the person presenting the same.
(4) Upon receipt of the certificate of title, application and the required fee the department shall issue a new certificate in the form provided by section 222 setting forth the name and address of each holder of a security interest in the vehicle or in any accessory thereon for which a termination statement has not been filed and the date on which the application first stating such security interest was filed, and mail the certificate to the owner.
(emphasis added) (footnote omitted).
[3] Although not in the stipulated facts, the Court finds FMCC knew of the proposed transfer in ownership as evidenced by the June 9 letter.
[4] M.C.L.A. § 257.234 states:

(a) Presentation of certificate. The purchaser or transferee, unless such person is a licensed dealer, shall present or cause to be presented the certificate of title and registration certificate if plates are being transferred to another vehicle, assigned as aforesaid, to the secretary of state accompanied by the fees as provided by law, whereupon a new certificate of title and registration certificate shall be issued to the assignee. The certificate of title shall be mailed or delivered to the owner or such other person as the owner may direct in a separate instrument in such form as the secretary of state shall prescribe.
(b) Transfer fees; vehicle without registration. Unless such transfer is made and the fee paid within 15 days, the vehicle shall be deemed to be without registration, and the secretary of state is authorized to repossess the license plates, and transfer of such vehicle ownership can be effected and a valid registration acquired thereafter only upon payment of a transfer fee of $5.00 in addition to the fee provided for in section 806.
(c) Holder of security interest; delivery of certificate of title. On or before January 1, 1969, the holder of a security interest in possession of the certificate of title, shall either mail or deliver the certificate to the owner.
(d) Same; compliance with section 257.238. If a security interest is reserved or created at the time of the transfer, the parties shall comply with the provisions of section 238.
(emphasis added) (footnotes omitted).
[5] M.C.L.A. § 440.1201(29) defines a "party" to mean a person who has engaged in a transaction or who has made an agreement within the Uniform Commercial Code, as amended. FMCC, being an organization, is a "person". M.C.L.A. § 440.1201(30). The Court finds FMCC became a party to the transaction or made an agreement with the Debtor when it consented to the transfer of the ownership of the vehicle as evidenced by the June 9 letter.
[6] Because this case was submitted based upon stipulated facts, the court was unable to assess the credibility of the Debtor and to determine whether the Debtor acted fraudulently, opportunistically, mistakenly or merely ignorantly when she undertook to transfer the title on behalf of FMCC.
[7] In Michigan, to perfect a security interest in a motor vehicle, an application must be filed with the Secretary of State which states the name and address of the secured party. M.C.L.A. § 440.9302(4); M.C.L.A. § 257.217(c); M.C.L.A. § 257.238(a); In re Schipper, 4 U.C.C.Rep.Serv. 242, 243 (Bankr.W.D.Mich.1966); In re Chapin, 6 U.C.C.Rep.Serv. 984, 989 (Bankr.W.D.Mich. 1969). Michigan therefore appears to be a "delivery" state rather than an "indication" or a "dual" state. See In re Farnham, 57 B.R. 241, 245, 42 U.C.C.Rep.Serv. 1059, 1065-66 (Bankr. D.Ver.1986) for a discussion of the three types of filing procedures under certificate of title statutes to perfect security interests in vehicles. In this case, FMCC was not noted on the second application or the second title. This decision does not address a situation when the secured creditor is listed on the application but not on the subsequently issued title. In such an instance, a collision between technical perfection requirements and the public policy argument regarding consumers' reliance upon titles would occur.
[8] This Court is aware of cases such as In re Skinner, 22 U.C.C.Rep.Serv. 1286, 1292 (Bankr. W.D.Mich.1977) and Royal Electrotype Corp., 485 F.2d 394, 396 (3rd Cir.1973) which hold the secured party does not bear the risk that the filing officer will not properly perform his duties. Those cases are inapposite to the present facts because of the duty imposed upon FMCC, as a party to the transaction, by M.C.L.A. § 257.234(d) to comply with M.C.L.A. § 257.238 to reserve a security interest in a registered vehicle upon transfer of the ownership. This opinion does not address the instance where the secured party was not a "party" to the transaction and its security interest was extinguished solely due to an error by the filing officer.
[9] See In re Trim-Lean Meat Products, Inc., supra at 336, where the court discusses the possible applicability of an equitable lien doctrine if fraud is shown. See also Footnote 6 supra.