In re Elizabeth M. FLEMING, Debtor.

Thomas A. BRUINSMA,
Trustee, Plaintiff,

v.

CITIZENS BANKING CORPORATION,
Defendant.

Bankruptcy No. GG–98–00459.
Adversary No. 98–88200.

United States Bankruptcy Court,
W.D. Michigan.

Oct. 16, 1998.

**4**

Paul F. Davidoff, Kalamazoo, MI, for Debtor.

Michael F. Fanning, Lansing, MI, Trustee.

### OPINION REGARDING LIEN AVOID-ANCE ACTION UNDER 11 U.S.C. § 544

JAMES D. GREGG, Chief Judge.

#### I. Introduction

This matter is before the court on the complaint of the plaintiff chapter 7 trustee, Thomas M. Bruinsma ("Trustee"), for a judgment avoiding the security interest of defendant Citizens Banking Corporation ("Bank") pursuant to 11 U.S.C. § 544, and for related relief. The court held a hearing on August 19, 1998, at which time the parties stipulated to the material facts and introduced two joint exhibits. The issues are (1) whether the Trustee may avoid the Bank's security interest in a certain vehicle jointly titled in the name of the Debtor and her former boyfriend; and (2) whether the Trustee may avoid as preferential transfers the three payments the Debtor made to the Bank on account of the vehicle indebtedness during the ninety day preference period. For the reasons set forth below, the court holds that the Trustee is not entitled to any relief in this action.

---

1. How this could be accomplished without Wohl-

#### II. Jurisdiction

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1334 and Local Rule 83.2 of the United States District Court for the Western District of Michigan. The action is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(F) and (K). The following constitutes the court's findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052.

#### III. Findings of Fact

In April, 1997, Elizabeth M. Fleming ("Debtor") and her then-boyfriend, Jeremy S. Wohlford ("Wohlford"), financed the purchase of a 1994 Chevrolet Camaro ("vehicle") through the Bank. For convenience, the court will refer to this transaction and the resulting debt as the "April Loan." The Bank caused a completed application for Michigan title and related title documentation to be filed with the Michigan Secretary of State. Thereafter, the Secretary of State issued a certificate of title listing the Debtor and Wohlford as joint owners, and the Bank as the first secured party. *See* Exhibit 1.

Within a few months, after the Debtor and Wohlford apparently severed their relationship, the Debtor informed the Bank that she wished to remove Wohlford from the vehicle certificate of title.[1] On September 5, 1997, the Bank and the Debtor entered into a transaction pursuant to which the Debtor executed a new installment loan agreement for the unpaid balance of the April Loan. The Debtor also paid a processing fee and title fee. For convenience, the court will refer to this transaction and the resulting debt as the "September Loan."

On the certificate of title that the Secretary of State issued earlier that year, next to the words "RELEASE OF LIEN," the Bank's agent endorsed the name "Citizens Bank," the agent's name, and the date, "9/5/97." On the reverse side of the certificate of title, in the space reserved for noting "NEW LIENHOLDER INFORMATION," the Bank's agent wrote "Citizens Bank 728 S. Saginaw Flint Mi 48502." In addition, the Bank prepared a new application for certifi-

ford's consent is problematic.

cate of title. *See* Exhibit 2. Although the Bank instructed the Debtor to file with the Secretary of State the old certificate of title and the application for a new certificate of title, she failed to do so.

Thereafter, between October 20, 1997, and January 20, 1998, the Debtor made three payments to the Bank on account of the September Loan, totaling $907.05.

On January 20, 1998, the Debtor filed her voluntary petition under chapter 7 of the Bankruptcy Code. *See* 11 U.S.C. §§ 101 *et seq.* On the date of the filing of the petition, the Secretary of State's records showed that the Debtor and Wohlford jointly owned the vehicle and that the Bank was still the "first secured party." *See* Exhibit 1.

### IV. Conclusions of Law

#### A. *The Trustee May Not Avoid the Bank's Security Interest*

 Perfection of a security interest in a motor vehicle is governed by Michigan's Vehicle Code, and the rights arising from a perfected or unperfected status are determined by the Uniform Commercial Code as adopted in Michigan. *See* Mich. Comp. Laws Ann. § 440.9302(3)(b) (financing statement not necessary or effective to perfect security interest in property subject to the Michigan Vehicle Code); *id.* § 257.238 (security interests in vehicles); *id.* § 257.234 (transfers of interest in motor vehicles). This court has so held in *Remes v. Ford Motor Credit Co. (In re Churchwell)*, 80 B.R. 855 (Bankr. W.D.Mich.1987). *See also In re Milcher*, 86 B.R. 103, 104 (Bankr.W.D.Mich.1988) (*citing*

*Frank v. Second Nat'l Bank of Saginaw (In re Gilbert)*, 82 B.R. 456 (Bankr.E.D.Mich. 1988)).

 Strictly speaking, the September Loan was a refinancing of the April Loan, in effect a novation. By applying the proceeds of the refinancing to the April Loan, the Bank extinguished the Debtor's and Wohlford's joint obligation under the April Loan, and substituted in lieu thereof the Debtor's sole obligation to repay the amount ultimately financed.[2] Thus, the court agrees with the Trustee that, as a result of the September Loan, the Debtor technically created a new, substitute security interest in the vehicle. Notwithstanding the creation of the substitute security interest, under the facts and circumstances in this adversary proceeding, the Bank was not required to submit a new title application to the Michigan Secretary of State. In fact, the Bank tried to do so only to accommodate the Debtor's request to remove Wohlford from the title.

A lender who refinances an automobile loan, and who secures the new debt with the same vehicle that secured the original debt, is not (by virtue of the refinancing) required to file a termination statement and an application for new title. Rather, the Michigan Vehicle Code implicitly continues the perfection of the prior security interest: a secured party must execute a termination statement only when "there is no outstanding obligation *and no commitment to make advances, incur obligations or otherwise give value*" to the debtor. Mich. Comp. Laws Ann. § 257.238(c)(2) (emphasis added).[3] Because

---

2. A novation is "simply the substitution of one debtor for another, or the substitution of a new obligation for an old one, which is thereby extinguished." *Husted v. Pogue*, 249 Mich. 410, 418, 228 N.W. 737, 740 (1930). The four elements of a novation are well-established in Michigan: (1) parties capable of contracting; (2) a valid prior obligation to be displaced; (3) the consent of all parties to the substitution based upon consideration; (4) the extinction of the old obligation and the creation of a valid new one. *Leila Hosp. and Health Center v. Xonics Medical Sys., Inc.*, 948 F.2d 271, 274 (6th Cir.1991) (elements of novation under Michigan law); *BRB Printing, Inc. v. Buchanan*, 892 F.Supp. 190, 192 (E.D.Mich. 1995), *aff'd*, 106 F.3d 400 (6th Cir.1997) (unpublished table opinion available at 1997 WL 6119); *Hitts v. General Fin. Corp. (In re Hitts)*, 21 B.R.

158 (Bankr.W.D.Mich.1982) (where creditor made series of loans, with the proceeds of each loan being used to pay off prior loan, court determined that each subsequent loan constituted a novation).

3. The applicable subsection provides as follows:

(c) Termination statement. (1) Whenever there is no outstanding obligation and no commitment to make advances, incur obligations or otherwise give value, secured or to be secured by a security interest in a vehicle, or an accessory thereon, for which the certificate of title is in possession of a secured party, such secured party shall, within 10 days after satisfaction of the obligation and, in any event within 30 days, execute a termination statement in the form prescribed by the department

the Bank, in agreeing to the Debtor's proposal to remove Wohlford from the title, obligated itself to refinance the April Loan, it was not required to execute a termination statement. *Id.*

■ Moreover, the Bank was entitled to rely on the existing certificate of title which noted its security interest (*see* Exhibit 2) because the statute states that a "certificate of title shall remain valid until canceled by the secretary of state for cause or upon the transfer of an interest shown on the certificate of title." Mich. Comp. Laws Ann. § 257.226(7); *see also id.* § 257.237 (new certificate of title upon surrender). In other words, under the Michigan Vehicle Code, effective modification of the title certificate requires action by the Secretary of State. Here, as a result of the Debtor's failure to file a new title application prior to the commencement of the bankruptcy case, the Michigan Secretary of State took no action with respect to the original certificate of title. Consequently, the records of the Secretary of State still place all persons on notice of the Bank's security interest in the vehicle, as well as Wohlford's joint ownership interest. *See* Exhibit 2; *compare* Mich. Comp. Laws Ann. § 257.237(1) (upon receipt of proper paperwork, Secretary of State shall issue new certificate of title) *with id.* § 257.226(7) (certificate of title remains valid until canceled by Secretary of State) *and id.* § 257.258(a) (grounds for cancellation); *cf. In re Superior Ground Support, Inc.,* 140 B.R. 878 (Bankr.W.D.Mich.1992) (transfer of interest in motor vehicle is not complete until parties comply with Michigan Vehicle Code).

Moreover, although the Bank noted its supposed release of lien on the front of the original certificate of title, it also noted its new security interest on the reverse side. Thus, the certificate of title itself puts a prospective purchaser or lender on notice of the Bank's continuing security interest in the vehicle.

The court, therefore, rejects the Trustee's argument that the Bank released, waived or otherwise forfeited its security interest by refinancing the April Loan, endorsing its name next to the phrase "RELEASE OF LIEN" on the face of the title certificate, and failing to ensure that new title application was delivered to the Michigan Secretary of State. The Trustee's argument, if accepted, would impose an unnecessary and onerous burden on the refinancing of automobile loans in Michigan, a burden which neither the Michigan Vehicle Code nor its underlying policy require.

Although *In re Churchwell, supra,* has some superficial similarities to the facts presented here,[4] that decision is easily distinguished. The net effect of the lender's misplaced reliance on the borrower in *Churchwell* was that the new certificate of title that was issued did not disclose the lender's security interest; in the present case, notwithstanding the Debtor's failure to file the new title application, the original certificate of title continued to reflect the lender's interest in the collateral, as did the records of the Michigan Secretary of State.

The court's analysis is also consistent with the Sixth Circuit's decisions in *Yampolsky v.*

and mail or deliver the termination statement to the owner or such other person as the owner may direct. The owner other than a dealer holding the vehicle for resale, shall promptly cause the certificate, all termination agreements, and an application for certificate of title accompanied by the proper fee, to be mailed or delivered to the department, which shall issue a new certificate.

(2) Whenever there is no outstanding obligation and no commitment to make advances, incur obligations or otherwise give value, secured or to be secured by a security interest in a vehicle, or an accessory thereon, for which the certificate of title is in the possession of another person, the secured party shall within 10 days after demand and in any event within 30 days, execute a termination statement in the

form prescribed by the department and mail or deliver the termination statement to the owner or such other person as the owner may direct. Mich. Comp. Laws Ann. § 257.238(c). In the present case, paragraph (2) of subsection (c) applies, rather than paragraph (1), because the certificate of title is not in the Bank's possession.

4. Both cases involve apparently failed romantic relationships in which the woman sought to remove her former partner from the title, and in which the woman enlisted the aid of the lender in effecting the change. In both cases, the lenders tried to accommodate their borrowers, and regrettably relied on them to file an application for certificate of title which noted the respective lenders' security interests.

*White Motor Credit Corp. (In re Angier)*, 684 F.2d 397 (6th Cir.1982), and *Uhle v. Parts and Trucks (In re Paige)*, 679 F.2d 601 (6th Cir.1982), which take a "liberal approach" to the recording requirement, an approach that "focuses on whether the certificate of title or a search of Michigan Department of State's records would put a potential creditor on 'notice' of prior security interests." *See In re Skyland, Inc.*, 28 B.R. 354, 356 (Bankr. W.D.Mich.1983), *aff'd sub nom. In re National Welding of Michigan, Inc.*, 61 B.R. 314 (W.D.Mich.1986); *see also In re Microband Cos., Inc.*, 135 B.R. 2 (Bankr.S.D.N.Y. 1991) (security interest in vehicle is perfected under Michigan law because examination of title certificate that inaccurately listed secured party as owner would put potential secured creditor on notice of secured party's interest). As Judge Miles observed in affirming Judge Howard's decision in *Skyland*, "upon an examination of the titles or through a search with the Michigan Department of State, a potential secured creditor would have been put on notice" of the secured party's interest. *In re National Welding of Michigan, Inc.*, 61 B.R. at 317 (strict compliance doctrine does not apply to the perfection of security interests in vehicles governed by the Michigan Vehicle Code). Thus, in this instance, notice of the Bank's security interest in the vehicle is more than adequate: the Bank is listed as a secured party both on the certificate of title and in the records of the Michigan Secretary of State.

### B. *The Trustee May Not Recover the Alleged Preferential Transfers*

■ The Trustee also challenges as preferential the three payments to the Bank (totaling $907.05) that the Debtor made on account of the September Loan within ninety days before the bankruptcy filing. In order to prevail on his preference claim, the Trustee must show, *inter alia*, that the transfer enabled the Bank to receive more than it would have received if

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(5).

■ It is well-settled that payments made to fully-secured or oversecured creditors are not avoidable preferences "since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation." *Ray v. City Bank and Trust Co. (In re C–L Cartage Co., Inc.)*, 899 F.2d 1490, 1493 (6th Cir.1990). On the other hand, payments to an unsecured or undersecured creditor may be preferential, assuming the other elements of section 547(b) are established. *Id.; compare Gilbert v. Gem City Savings Ass'n (In re Hale)*, 15 B.R. 565 (Bankr. S.D.Ohio 1981) (payment from Debtor to fully-secured creditor is not preferential) *with Spence v. Lansing Automakers Fed. Credit Union (In re Satterla)*, 15 B.R. 166 (Bankr. W.D.Mich.1981) (payment made to partially-secured creditor may be subject to avoidance as preferential transfer) *(citing Belfance v. Bancohio/National Bank (In re McCormick)*, 5 B.R. 726 (Bankr.N.D.Ohio 1980)); *see* 3 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE 2D, § 57:9, at 57–41 ("If the secured creditor's lien is valid in bankruptcy, his expected return in a bankruptcy liquidation includes the value of the collateral up to the total amount of the claim. If the value of the collateral exceeds the debt, the creditor's position is not improved by any payment on account of the debt. On the other hand, if the debt exceeds the value of the collateral, payment will generate a preferential effect.").

At trial, the Trustee did not establish the value of the vehicle. Accordingly, the court cannot determine whether the Bank is undersecured, 11 U.S.C. § 506(a), and thus cannot determine whether the allegedly preferential payments enabled the Bank to receive more than it would have received in a chapter 7 liquidation. *See* 11 U.S.C. § 547(b)(5). Therefore, having failed to meet his burden of proof, *see* 11 U.S.C. § 547(g), the Trustee is not entitled to recover the $907.05 in payments that the Debtor made on account of the September Loan during the ninety-day preference period.

**8**

### V. Summary

Because the Bank's security interest in the vehicle was perfected on the date of the filing of the petition, the Trustee cannot avoid it under 11 U.S.C. § 544(a). Moreover, because the Trustee failed to establish that the Bank's claim was undersecured, the Debtor's payments to the Bank during the ninety days preceding the filing of the petition are not avoidable as preferential transfers under 11 U.S.C. § 547(b). Accordingly, the Trustee is entitled to no relief. The court will prepare and enter a separate judgment in favor of the Bank.