**In the Matter of Robert C. THOMAS and Angel K. Thomas, Debtors.**

**James W. Boyd, Chapter 7 Trustee, Plaintiff,**

**v.**

**NBD Bank, Defendant.**

**Bankruptcy No. 97–09508.
Adversary No. 98–88406.**

United States Bankruptcy Court,
W.D. Michigan,
Northern Division.

March 5, 1999.

Michael I. Conlon, Traverse City, Michigan, for James W. Boyd, Chapter 7 Trustee.

Michael Long, Traverse City, Michigan, for NBD Bank.

*OPINION REGARDING TRUSTEE'S*
*ACTION UNDER 11 U.S.C.*
*§ 544(a)*

JAMES D. GREGG, Chief Judge.

## I. INTRODUCTION

This adversary proceeding arises out of a motor vehicle lease-purchase transaction in which the original lessor agreed to finance the lessees' subsequent purchase of the leased vehicle. The matter was tried to the court, without a jury, on stipulated facts. *See* Stipulated Facts. Robert C. and Angel K. Thomas ("Debtors") granted a security interest, ultimately assigned to NBD Bank ("NBD"), to secure the loan that NBD made to enable them to purchase the 1996 Dodge Ram Truck ("vehicle") previously leased from NBD. The issue for decision is whether chapter 7 trustee James W. Boyd ("Trustee") has rights in the vehicle that are superior to NBD's security interest, thereby entitling the Trustee to the proceeds from the subsequent sale of the vehicle.

## II. JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(a), and Local Rule 83.2(a) of the United States District Court for the Western District of Michigan. The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(E) & (K). The following constitutes the court's findings of fact and conclusions of law in accordance with FED. R.BANKR.P. 7052.

## III. FINDINGS OF FACT

Beginning in October, 1995, NBD leased the vehicle to the Debtors, and the Debtors made lease payments for approximately twenty-one months. During the term of the lease, the certificate of title to the vehicle listed NBD as "LESSOR" and listed the Debtors as "LESEES" [sic]. *See* Plaintiff's Exhibit ("Exh.") 2. In August, 1997, the Debtors elected to purchase the vehicle from NBD, as provided in the lease, and financed their acquisition through NBD. *See* Stipulated Facts at ¶¶ 4–5.

To accomplish the sale to the Debtors, the parties undertook a four-step transaction. First, NBD conveyed legal title in the vehicle to Bill Marsh Chrysler Plymouth Dodge ("Dealership") by noting the transfer on the reverse side of the certificate of title. *Id.* at ¶ 7; Exh. 8. Second, the Dealership transferred title to the Debtors. *See* Stipulated Facts at ¶ 6; Exh. 8. Third, the Debtors granted the Dealership a security interest in the vehicle. *See* Exh. 6. Fourth, the Dealership assigned the security interest to NBD. *See* Stipulated Facts at ¶ 17. The document effecting the assignment of the security interest from the Dealership to NBD was not included among the exhibits, but the fact of the assignment is not disputed.

The Dealership prepared an application for Michigan title ("RD 108") on August 15, 1997, identifying the Debtors as owners and NBD as the first secured party. *See* Exh. 7. On November 3, 1997, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code. *See* Stipulated Facts at ¶ 23. At that time, no party had filed with the Secretary of State the RD 108 application form reflecting the August 1997 transactions, but the reverse side of the certificate of title, in the section entitled "NEW LIENHOLDER INFORMATION," listed "NBD BANK" as the "Secured Party." *See* Exh. 8. Therefore, at the time of the filing of the bankruptcy petition, the certificate of title referred to NBD as a secured party, and the records of the Secretary of State referred to NBD as owner and lessor. *See* Stipulated Facts at ¶ 25.

The RD 108 was filed with the Secretary of State on December 26, 1997, fifty-three days after the Debtors filed their bankruptcy petition. *See id.* at ¶ 26. Sometime in early 1998, NBD repossessed the vehicle, and sold it for $14,050. *See id.* at ¶ 28. On July 16, 1998, the Trustee timely commenced this adversary proceeding to avoid NBD's security interest and recover from NBD the proceeds of the sale of the vehicle.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

The Trustee contends that, in failing to ensure that the RD 108 form was filed with

the Michigan Secretary of State prior to the Debtors' filing of their petition, NBD failed to comply with section 257.238 of Michigan's Vehicle Code. *See* Mich.Comp.Laws Ann. §§ 257.1–257.923 (hereinafter "Vehicle Code"). Therefore, the Trustee asserts that NBD's security interest in the vehicle is unperfected and avoidable, and that he is entitled to turnover of the proceeds received from NBD's sale of the vehicle.

NBD argues, on the other hand, that at all relevant times the certificate of title and the records of the Secretary of State gave notice of its interest in the vehicle, and therefore its security interest is not avoidable. The controversy must be resolved by reference to Michigan's version of the Uniform Commercial Code ("U.C.C.") and the titling provisions of the Vehicle Code.

The U.C.C. expressly provides that the filing of a financing statement is "not necessary or effective" to perfect a security interest in a motor vehicle (unless the vehicle is "inventory"), because motor vehicles are subject to the title provisions of Michigan's Vehicle Code. *See* Mich.Comp.Laws Ann. § 440.9302(3)(b)(i) (security interest in property subject to Michigan Vehicle Code cannot be perfected by filing under Article 9). Instead, under the U.C.C., a secured party's compliance with sections 257.217 and 257.238 of the Vehicle Code "is equivalent to the filing of a financing statement" under Article 9. *See* Mich.Comp.Laws Ann. § 440.9302(4). More to the point, the U.C.C. provides, in relevant part, that,

> a security interest in property subject to [Vehicle Code §§ 257.217 & 257.238] can be perfected *only by compliance therewith* . . . .

Mich.Comp.Laws Ann. § 440.9302(4) (emphasis added). Thus, under the U.C.C., NBD or the Dealership could have perfected the security interest in the vehicle "only by" complying with section 257.238 of the Vehicle Code.[1]

---

1. This section on its face applies only "[w]hen an owner named in a certificate of title creates a security interest." Mich.Comp.Laws Ann. § 257.238. At the time the Debtors granted the security interest, they were arguably not named in the certificate of title as owners. By virtue of Vehicle Code § 257.234(4), however, the provi-

Section 257.238, in turn, required the Dealership or NBD (as "holder of the security interest") to "cause the certificate of title, application and fee and the copy of such application to be mailed or delivered to the [Secretary of State]." Mich.Comp.Laws Ann. § 257.238(a)(2). As set forth in the stipulated facts, however, the RD 108 application form was not filed prior to the Debtors' filing of their bankruptcy petition. *See* Stipulated Facts at ¶ 26. Therefore, because neither NBD nor the Dealership complied with section 257.238(a)(2) of the Vehicle Code, and because such compliance was prerequisite to perfection under section 440.9302(4) of the U.C.C., NBD's security interest in the vehicle was not perfected on the petition date. *In re Schipper*, 4 U.C.C.Rep.Serv. 242 (Bankr.W.D.Mich.1966) (credit union's security interest in automobile was unperfected because credit union did not file application for certificate of title noting its security interest in the vehicle).

As the court has recently stated, "perfection of a security interest in a motor vehicle is governed by Michigan's Vehicle Code, and the rights arising from a perfected or unperfected status are determined by the Uniform Commercial Code." *Bruinsma v. Citizens Banking Corp. (In re Fleming)*, 226 B.R. 3, 5 (Bankr.W.D.Mich.1998) (*citing, inter alia, Remes v. Ford Motor Credit Co. (In re Churchwell )*, 80 B.R. 855 (Bankr. W.D.Mich.1987)). Because NBD's security interest in the vehicle was not perfected on the date that the Debtors filed their bankruptcy petition, the court turns to the U.C.C. to determine the effect of NBD's failure to perfect.

Section 440.9301 of the U.C.C. provides that an unperfected security interest is "subordinate to the rights of . . . [a] person who becomes a lien creditor before the security interest is perfected. . . ." Mich.Comp. Laws Ann. § 440.9301(1)(b). NBD's interest in the vehicle was unperfected on November

sions of section 257.238 also apply to security interests "reserved or created" at the time of a transfer of title. *See id.* § 257.234(4) (making § 257.238 applicable). Hence, Vehicle Code § 257.238 mandates the steps for perfecting NBD's security interest.

3, 1997. Moreover, as a matter of state and federal law, the Trustee has the rights of a "lien creditor" as of that date. *Compare* 11 U.S.C. § 544(a)(1) & (a)(2) (giving trustee rights of hypothetical lien creditor as of petition date) *with* Mich.Comp.Laws Ann. § 440.9301(3) (defining "lien creditor" to include a trustee in bankruptcy as of the date of the filing of the petition). Accordingly, the Trustee's rights in the vehicle are superior to NBD's security interest.

■ NBD has advanced several arguments in favor of the priority of its security interest, each of which merits brief discussion but none of which merits relief. First, NBD argues that if it failed to comply with the Vehicle Code, the transaction would have been void, and NBD would still hold title to the vehicle. *See* Defendant NBD Bank's Legal Memoranda [sic] ("Def. Br.") at 2–3. The argument is unsound. The transfer of ownership from NBD to the Dealership was effective notwithstanding the failure to file formal paperwork with the Secretary of State, because a dealer who acquires a vehicle for resale is not required to forward the certificate of title to the Secretary of State. *See* Mich.Comp.Laws Ann. § 257.235(1). In such a case, the effective date of transfer is the date of execution of either the application for title or the certificate of title. *Id.* § 257.233(5). In other words, NBD's failure to file an RD 108 form noting its security interest in the vehicle did not affect the validity of the transfer from NBD to the Dealership. Similarly, the Dealership's transfer of title to the Debtors was effective when the Dealership assigned its ownership interest to the Debtors, and executed the certificate of title. *Id.*

Second, relying on *Fleming, supra,* NBD argues that, because the certificate of title and the records of the Michigan Secretary of State gave notice of NBD's security interest, NBD enjoys a first priority. The court rejects the argument. In *Fleming,* unlike the present case, the lender complied with the governing perfection requirements of the Vehicle Code, and the court concluded that the lender's perfected security interest *continued* to be perfected because of the lender's commitment to make further advances. *See*

*In re Fleming,* 226 B.R. at 5–6 (*citing* Mich. Comp.Laws Ann. § 257.238(c)(2)); *see also* Mich.Comp.Laws Ann. § 440.9302(4) ("Duration and renewal of perfection of a security interest perfected by compliance with [the Vehicle Code] are governed by the provisions of [the Vehicle Code]"). In the present case, unlike *Fleming,* at no time did NBD have a perfected security interest in the vehicle. Rather, NBD initially had title, subject to the Debtors' lease, which title it transferred to the Dealership. Thereafter, the Debtors— for the first time—granted a security interest to the Dealership, which it then assigned to NBD. However, neither the Dealership nor NBD ever caused the RD 10 application form to be filed with the Secretary of State. *Fleming* is distinguishable.

The court's reference in *Fleming* to the notice of a security interest provided by an "examination of titles" or a "search with the Michigan Department of State" merely illustrates the rule expressed in the U.C.C. that minor errors in perfection, which are not "seriously misleading," will not render ineffective a financing statement or its equivalent. *See* Mich.Comp.Laws Ann. § 440.9402(8) ("A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."); *id.* § 440.9302(4) (compliance with filing provisions of Vehicle Code is "equivalent to the filing of a financing statement"). In the present case, NBD, through the Dealership, failed to comply with the recording statute because the RD 108 application form was not filed (until after the petition). In any event, under the 1978 version of the U.C.C. as adopted in Michigan, a lien creditor's "[k]nowledge of the security interest will no longer subordinate the lien creditor to the unfiled security interest." *See* Uniform Commercial Code, Official Reasons for 1972 Change *and* Historical and Statutory Notes (both following Mich.Comp. Laws Ann. § 440.9301).

■ Finally, although the court is cognizant of NBD's suggestion that a decision subordinating its unperfected security interest may adversely affect vehicle lease-purchase transactions in Michigan, NBD's con-

cern is exaggerated. Lenders involved in motor vehicle financing can protect themselves simply by delivering the RD 108 application form, with a notation of their security interest, to the Secretary of State. When a lender relies upon an automobile dealer to deliver the RD 108 application, the lender may monitor the dealer's compliance with the Vehicle Code. The lender may also protect itself by requiring the dealer to repurchase the chattel paper in the event that the dealer fails to comply with the Vehicle Code and to properly file the RD 108 application form. Such recourse agreements are not uncommon. On the other hand, lenders who continue to rely upon other persons (whether dealers or borrowers) to file RD 108 applications do so at their own peril. *See In re Churchwell,* 80 B.R. at 860 (secured party has "duty to comply with M.C.L.A. § 257.234 and § 257.238.").

### V. RELIEF

Although the first count of the Trustee's complaint seeks "avoidance" of NBD's security interest, on the stipulated facts it appears that the security interest was extinguished upon NBD's sale of the vehicle in early 1998, after the bankruptcy filing but prior to the filing of the complaint in this adversary proceeding. *See* Stipulated Facts at ¶ 28. Under the U.C.C., a secured party's disposition of the collateral "discharges the security interest under which [the disposition] is made...." Mich.Comp.Laws Ann. § 440.9504(4). It follows that, at the time of the commencement of this action, NBD no longer held a security interest that could be avoided. Nevertheless, the sale by NBD converted the vehicle into proceeds, and the rights of NBD, as holder of an unperfected security interest, are subordinate to the rights of the Trustee as hypothetical lien creditor. The parties have stipulated that, assuming the superiority of the Trustee's interest in the vehicle, his damages would be $14,050. *See* Transcript of Trial at 20. Accordingly, as requested in the second count of the Trustee's complaint, the Trustee is entitled to judgment requiring NBD to turnover the proceeds resulting from the repossession and sale of the vehicle. *See* 11 U.S.C. § 542.[2]

### VI. CONCLUSION

For the reasons set forth above, the Trustee is entitled to a judgment (1) declaring that his rights in the vehicle and its proceeds are senior to NBD's unperfected security interest, and (2) requiring NBD to turnover the $14,050 in proceeds of NBD's sale of the vehicle, plus costs of this proceeding. The court will prepare a separate judgment in accordance with this opinion.

---

2. At trial, Trustee's counsel also suggested that he would seek attorneys fees and costs, although he provided no authority for an award of attorneys fees. In Plaintiff's Closing Statement, the Trustee seeks damages in the amount of $14,050, and costs, but does not request attorneys fees. Under the circumstances, the court declines to award any attorneys fees.