In re Julie A. KAHL, Debtor.

Paul G. Swanson, Chapter
7 Trustee, Plaintiff,

v.

General Motors Acceptance
Corporation, Defendant.

Bankruptcy No. 01–32245.
Adversary No. 02–2207.

United States Bankruptcy Court,
E.D. Wisconsin.

Feb. 27, 2003.

Paul G. Swanson, Oshkosh, WI, for Plaintiff.

Phillip S. Caruso, Brookfield, WI, for Defendant.

## MEMORANDUM DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

MARGARET DEE MCGARITY, Chief Judge.

This matter came before the court upon the parties' cross-motions for summary judgment. This court has jurisdiction over the parties to this proceeding and has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (K) and (O). The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Bank. P. 7052. For the reasons stated below, the defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied.

## BACKGROUND

Prior to the commencement of this case, the debtor purchased a 1996 Oldsmobile Cutlass from the dealer, Baird, Inc., and executed and delivered to the defendant, General Motors Acceptance Corporation ("GMAC"), a security agreement granting a security interest in the vehicle. The Wisconsin Title and License Plate Application, signed by the debtor on May 15, 1999, listed GMAC as the secured party (Form DMV–1).

In a letter to GMAC's counsel, The Wisconsin Department of Transportation ("DOT") offered the following explanation of what subsequently transpired:

The application shows Baird, Inc., as the licensed selling dealer. Baird Inc. is a "third party agent" and is under contract (a copy of which is enclosed) with the Wisconsin Department of Transportation and may issue license plates and process title transactions. Baird, Inc., "processed" this transaction as a third party agent. That is, Baird, Inc. typed the information needed to title the vehicle and enter the vehicle into the Division of Motor Vehicle's vehicle database. In doing so, Baird Inc. neglected to enter the GMAC lien shown on the MV1 into the system. As a result of this administrative error, when Wisconsin Certificate of Title 99163HLD11 was automatically printed and mailed to the vehicle owner, no secured party was shown on the title and no MV2076, Notice of Lien Confirmation, was generated for the transaction.

(Letter dated September 18, 2002, from Janet Schmelzer, Supervisor of Research and Information Unit of Bureau of Vehicle Services).

The debtor filed a chapter 7 petition on October 29, 2001. Apparently unaware the validity of the security interest was at issue, she reaffirmed her obligation with GMAC, and received a discharge on February 22, 2002. The trustee commenced this adversary proceeding on May 31, 2002, to avoid the unperfected security interest in the vehicle, to turnover payments made to the creditor after filing, and to preserve the remaining amount due on the loan for the benefit of the estate. 11 U.S.C. §§ 544, 550. Cross-motions for summary judgment were filed, and the matter was fully and well briefed by both parties.

## ARGUMENTS

GMAC moved for summary judgment dismissing the complaint on the grounds its security interest in the debtor's 1996 Oldsmobile is superior to any interest of the trustee. The DOT admitted in writing that its agent erred in failing to properly record GMAC's security interest in the vehicle. Substantial case law interpreting § 409.403(1), Wis. Stats., known as the "savings clause" under Wisconsin's version of the Uniform Commercial Code, indicates that under state law the secured party should not suffer the consequences of the filing officer's mistake in improperly recording its interest. This assumes that the secured party did not cause the mistake, and no such cause is alleged here.

The trustee moved for summary judgment as well, asserting he was entitled to judgment as a matter of law voiding the security interest of GMAC. While recognizing the exception contained in § 409.403(1), Wis. Stats., for saving an otherwise voidable security interest, the trustee contends that clause does not apply under the facts of this case. The error was not in the delivery of the information to the Department of Motor Vehicles ("DMV"), as the electronic application for a certificate did not contain the name and address of the secured party as required by § 342.19(2), Wis. Stats. Because the error was committed by the employee acting on behalf of GMAC, for a consideration to the employer, Baird, Inc., the trustee contends GMAC should bear the loss occasioned by the error.

## DISCUSSION

A motion for summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr.P. 7056. The parties agree that this case is appropriate for summary judgment.

Sections 341.21 and 341.255(4), Wis. Stats., authorize the DOT to contract with any person for services relating to processing or distribution of original and renewal vehicle registrations under chapter 341, Wis. Stats., or certificates of title under chapter 342, Wis. Stats. The Administrative Code sets forth the requirements an agent must comply with in order to contract with the DOT for services relating to processing or distribution of vehicle registrations. *See generally* Wis. Admin. Code Ch. Trans 156. Once this agreement is executed, new and used car and truck dealers in Wisconsin, acting as appointed "participating dealers" through the Computerized Vehicle Registration (CVR) program, are allowed to file applications for certificate of title and vehicle registration with the DMV on behalf of their customers. Baird, Inc., the auto dealer that sold the vehicle in question to the debtor, was one such participating dealer.

The standard form contract between the DOT and Baird provided:

> Section 6. *Issuance of Titling Materials by the Dealers.* When a Dealer submits a vehicle registration application or renewal to the DMV via the CVR network, it is authorized by the DMV to be the express and limited branch office of the DMV in order to issue to the person submitting an application for a dealer title service, the appropriate titling materials, including license plates and/or registration stickers, upon payment by such person to the dealer, as branch office of the DMV, of appropriate fees and taxes. Issuance of such Titling Materials shall be consistent, at all times, with the terms of Dealer's agreement with CVR which much be approved by the DMV.

(Dealer Express and Limited Branch Office Contract between the Wisconsin Department of Transportation and Baird, Inc., dated January 14, 1998).

■ The only method of perfecting a security interest in a motor vehicle in Wisconsin is pursuant to § 342.19, Wis. Stats. However, reference to analogous provisions in the Uniform Commercial Code and vehicle codes of other states may be useful in analyzing whether a savings provision can be applied to the facts of this case. Pursuant to Wisconsin's version of the Uniform Commercial Code, "[p]resentation for filing of a financing statement and acceptance of the statement by the filing officer constitutes filing under this chapter." Wis. Stats. § 409.403(1). A leading treatise has concluded:

> Implicit in the definition of filing and explicit in the comments[1] is the idea that errors of filing officers are not borne by filers. The cases are clear that a mistake by the clerk ... does not affect the perfection of the creditors' security interest where the financing statement presented was proper even though no notice is given to subsequent searchers. This equitable notice, that a creditor should be able to rely upon the acts of a filing officer, has been otherwise invoked by creditors with varying success.

White & Summers, Uniform Commercial Code 196 (4th ed.1995). Case law concurs with this conclusion. *See, e.g., Chrysler Fin. Co. v. Schlant*, 243 B.R. 613 (W.D.N.Y.2000) (holding that lender's security interest in debtor's automobile was perfected when the proper documentation and fee were delivered to the DMV, even though lender's name was not listed on the certificate of title because of administrative error by the DMV).

On the other hand, several cases illustrate the pitfalls of creditors relying on the automobile dealer to deliver the appropriate documentation to properly perfect a security interest on behalf of a lender. *See, e.g., In re Orcutt*, 280 B.R. 837 (Bankr.N.D.Iowa 2002) (concluding that lender was responsible for protecting its own interests and could not avoid the consequences of the dealer's handling of the transaction); *Matter of Thomas*, 231 B.R. 8 (Bankr.W.D.Mich.1999) (holding that lender may protect itself by requiring dealer to repurchase the chattel paper in the event the dealer fails to comply with filing requirements); *In re Jarvis*, 242 B.R. 172 (Bankr.S.D.Ill.1999) (stating that "[l]enders who rely upon others, whether dealers or borrowers, to file documents that are required to perfect their interest do so at their own peril"). In none of these cases, however, was the subject dealer contractually obligated to the DMV as a filing officer or agent.

There exists little case law, either directly or indirectly, on point with a third party perfecting a security interest. Going back to a time when electronic records were not widespread, and government records repositories did not typically contract with private parties for recording, the lender in *Matter of Christian*, 8 B.R. 816 (Bankr. M.D.Fla.1981), argued that an independent contractor was an agent or sub-agent of the agency that issued titles in the State of Florida. The lender had timely delivered the application for a title certificate together with the lien documentation to a "tag agency," and the certificate of title on the subject vehicle had a properly noted lien. Nevertheless, the trustee sought to invalidate the lien on the ground that it was a voidable preference, as it was not perfect-

---

**1.** Comment (1) to the official text of UCC § 9–407 reads, "under Sec. 9–403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties."

ed within 10 days after the security interest attached. The delay had been caused by the tag agency, an independent contractor whose duty it was to record documents with the county tax collector, which in turn prepared title documents and forwarded them to the proper state agency, whereupon the state agency issued the title. The lender contended that filing the papers with the tag agency was tantamount to filing the same with the state, and it was immaterial when the application to the state was filed or when the actual title certificate was issued by the state.

The bankruptcy court noted the existence of a contractual relationship between the state agency and the county tax collector, the entity responsible for forwarding the documentation to the state. However, the court was not satisfied that an agency relationship existed between the tag agency and the state, and the security interest was not avoided. Interestingly, the court found the tag agency "was an independent contractor charged with limited responsibilities such as processing applications for title certificates for motor vehicles, but [those] responsibilities did not include the power to record liens or issue title certificates." *Id.* at 818. In this case, Baird was authorized to issue titles.

▮ This case turns on when the mistake was made, and the timing is complicated by the fact that the same individual (or one or more employees of the same entity) performed all of the steps between the application for title and issuance of the title that omitted the creditor's interest. If we envision a single person working on this transaction, but wearing different hats as specific duties are performed, it is easier to see where the mistake was made and who should bear the loss. The transaction began when Baird, Inc., or a named dealership of Baird, Inc., sold the car to the debtor on credit. At this point Baird was

wearing its red seller's hat. Baird then sold the loan to GMAC, and as agent for GMAC, it switched to its green hat and filled out the DMV–1, listing GMAC, including its address, as creditor. Still wearing green, the agent submitted the DMV–1 to the proper authority for filing. So far, so good. However, instead of sending the properly completed DMV–1 to state offices in Madison, it chose to submit them to an agent designated by the state to accept documents, to enter them into the state's vehicle title data base, and to issue titles. That proper authority happens to be Baird, also, by virtue of its contract with the DMV making it a "Branch Office." The employee of this branch office accepted the DMV–1 after having switched to a blue hat as an agent of the state of Wisconsin.

Section 342.19(2), Wis. Stats., in relevant part, provides: "Except as provided in sub. (2m), a security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the secured party, and the required fee." Wis. Stat. § 342.19(2). This is similar in substance to the Uniform Commercial Code's savings clause relating to the perfection of security interests upon filing the correct information with the appropriate state agency. As no one has mentioned it, the fee appears not to be at issue, and no one has mentioned an existing title. Thus, perfection was complete when Baird, the GMAC agent wearing the green hat, delivered the DMV–1 to the state agent in the blue hat, who accepted it for filing. While the trustee questioned whether the application had been "delivered" to the DOT, this is answered in the affirmative, because without delivery, no title would have been issued, even an incorrect one.

The mistake occurred when the blue hatted agent entered the incorrect infor-

mation in the state's data base, inadvertently leaving GMAC off the title, causing the state to issue a title which is on its face free of encumbrances. Contrary to the trustee's assertion, an agent of GMAC would not be authorized to enter the state's vehicle data base nor to issue titles; only the agent of the state can do that. Therefore, once it is determined that an agent of the state made the mistake, the savings clause is implicated. GMAC, by its green hatted agent, did all that was required when it prepared and delivered to the state agent a correct DMV–1 disclosing its interest. Therefore, GMAC is perfected under state law, and the trustee cannot avoid the lien under 11 U.S.C. § 544.

Several cases dealing with questioned liens, after determining whether the lien could be avoided, opine as to who should be liable to whom outside the current action as a consequence of the court's finding in this action. We will resist the temptation to coach future litigation.

## CONCLUSION

For the reasons stated in this opinion, the defendant's motion for summary judgment is granted and the plaintiff's motion for summary judgment is denied. A separate order consistent with this opinion will be entered.